**Linda MEGANTZ et al., Petitioners, Appellants,**

v.

**Herbert W. ASH,
High Sheriff of Grafton County, Respondent, Appellee.**

No. 7344.

United States Court of Appeals
First Circuit.
May 21, 1969.

Ridler W. Page, William A. Baker, Lebanon, N. H., Allan R. Rosenberg and Putnam, Bell & Russell, Boston, Mass., for appellants.

John P. Chandler, Laconia, N. H., for Thomas G. Goulet, appellant.

Walter L. Murphy, Plymouth, N. H., for Michael W. Roberts, appellant.

William F. Batchelder, Plymouth, N. H., for Vladimir Svesko, appellant.

David H. Souter, W. Michael Dunn and Donald A. Ingram, Concord, N. H., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

On Tuesday, May 6, 1969, a group of Dartmouth College students and contemporaries of both sexes, hereinafter the occupants, invaded Parkhurst Hall, the College administration building, in Hanover, New Hampshire, ejected the personnel from their private offices, and barricaded themselves inside. This action was in protest against the College's position with respect to R.O.T.C.[1] The occupants were demanding immediate cancellation of contracts. "R.O.T.C. must go." When, after some period of time, requests to leave were ignored, the College applied for a court order and obtained from the state Superior Court a temporary injunction. The injunction was in seven paragraphs, only one of which is presently material.

"* * * any unauthorized persons are enjoined and restrained from * * * 2. Unauthorized occupation of any office or other private area in any building of Dartmouth College."

The occupants were in obvious violation. Copies were posted by the Sheriff during the early evening on the main doors of the Hall; a copy was pushed under the front door, promptly returned, pushed back again and not returned. The Sheriff, from outside the building, announced the terms of the injunction with a bullhorn eight times. The only consequence of his outdoing Joshua, however, was a closing of the windows.

At 11:00 P.M. the Sheriff arranged for a contingent of New Hampshire and Vermont state police. A large number arrived about 3:00 A.M. Wednesday morning. His request that the occupants leave of their own accord again evoking no response, the Sheriff ordered

1. We take "newspaper notice" that the College, in response to a majority choice, had announced a gradual phase-out of R.O.T.C. All other factual statements in this opinion are based upon the pleadings, submitted transcripts of the state court hearings, affidavits and uncontradicted statements of counsel.

the front door to be broken in. This was accomplished. The police were greeted by shouting, but no physical resistance. The occupants were led, or propelled, one at a time, through a corridor of policemen to a waiting bus, booked, photographed and jailed.

Some fifty-six individuals were arrested. During the next twelve hours all were released on bail. Prior to release they were notified that they would be tried for criminal contempt in the Superior Court on Friday, May 9 at 10:00 o'clock. At 9:00 P.M. Wednesday, thirty of the defendants retained a local firm of two lawyers, hereinafter counsel. Thereafter, with apparently little time off for sleep, counsel sought to prepare themselves for trial. During this interval they were retained by eighteen other defendants.[2] At some time on Thursday counsel orally requested a continuance of the trial to allow more time to prepare. The court indicated that it would be unreceptive, but suggested a written motion and a formal hearing on Friday morning. This hearing was held. The court granted a continuance to May 19 for three defendants who had retained counsel at 12:30 A.M. that morning, but denied continuances to 45 others, hereinafter petitioners. Continuances were also granted to certain further defendants, who had obtained representation that morning by another attorney. It is asserted that May 19 was selected because the court had previous commitments for the week of May 12. The court made no statement as to why it was not granting a similar continuance to petitioners. Trial proceeded, petitioners offering no evidence. They were convicted, and sentenced forthwith to 30 days in jail.

Later that same day counsel filed a petition for a writ of mandamus, the appropriate state form of review, with the Supreme Court of New Hampshire.

This was heard by the Chief Justice on Saturday morning and denied. Saturday afternoon counsel filed the present petition for a writ of habeas corpus in the District Court of New Hampshire. This was heard, ex parte, on Sunday morning, and denied. On Sunday afternoon a member of this court, after an ex parte hearing, denied without prejudice an application for bail pending appeal and assigned the application for hearing before the full court on Tuesday. This hearing was held, and the application again denied without prejudice. The court placed the appeal in order for hearing on Friday, May 16. At the conclusion of that hearing the court ordered five of the petitioners released on bail, denied a new application for bail by the others and took the case under advisement.

We start with the unquestioned proposition that the Federal courts do not sit in supervisory review of the state courts. Avery v. Alabama, 1940, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. The burden upon petitioners is the heavy one of showing an invasion of constitutional rights. In this respect the principal allegation was the lack of effective assistance of counsel. Complaints with regard to this fall generally in two areas; objective and subjective. As to the latter, regarding the overall performance and capability of counsel, realizing the inevitability of human imperfection and the omniscience of hindsight, courts require the subjective misfeasance or nonfeasance of counsel to be extreme before such will be recognized as ground for objection. Bell v. Alabama, 5 Cir., 1966, 367 F.2d 243, 247, cert. denied 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788; United States ex rel. Maselli v. Reincke, 2 Cir., 1967, 383 F.2d 129, 132; Johnson v. United States, 10 Cir., 1967, 380 F.2d 810; Cardarella v. United States, 8 Cir., 1967, 375 F.2d 222,

2. No possible criticism is to be voiced over the fact that two attorneys undertook to represent so many defendants. In seeking the continuance counsel informed the court that some of their clients had sought, unsuccessfully, to obtain other attorneys. We have no reason to doubt counsel's statement that at the present time such defendants do not find it easy to obtain representation.

cert. denied 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176; Bruce v. United States, 1967, 126 U.S.App.D.C. 336, 379 F.2d 113. Although counsel on this appeal have been both modest and diligent in pointing out what might be considered in this connection and we approach the issue from the standpoint of protecting the defendants, not counsel, we can see nothing that would justify granting the writ on that ground.

The burden may be less severe when the question is the objective one; the ineffectiveness of counsel due to insufficient time to prepare, focused mainly upon the correctness of the trial judge's denial of a motion for continuance. Even here, however, a strict standard of review is applied and reversal is ordered only when the time is demonstrably inadequate. Thus in Avery v. Alabama, *supra*, the Court refused to interfere where the defendant was tried for a capital offense three days after the appointment of counsel. The issue is one of fact; and wide discretion is afforded the trial judge's decision. Nilva v. United States, 1957, 352 U.S. 385, 395, 77 S.Ct. 431, 1 L.Ed.2d 415. And as the Supreme Court stated in Ungar v. Sarafite, 1964, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921:

> "The matter of continuance is traditionally within the discretion of the trial judge * * *. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case * *."

While we agree with the Fourth Circuit conclusion, *see* Fields v. Peyton, 1967, 375 F.2d 624 and cases discussed therein, that a point may come where the preparation time is so short under the circum-stances as to require no showing of actual prejudice by a defendant who asserts no evidence, fifteen minutes can be long enough to learn that a defendant has no defense. *Cf.* United States v. Wight, 2 Cir., 1949, 176 F.2d 376, cert. denied 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586. As to forty of the petitioners, counsel have now had a week to proffer any meritorious defenses they may not have had time enough to ascertain between Wednesday evening and Friday morning.[3] Any presumption of prejudice they could claim to have had can no longer be existent.[4] *Cf.* Baldwin v. United States, 3 Cir., 1958, 260 F.2d 117, cert. denied 360 U.S. 938, 79 S.Ct. 1463, 3 L.Ed.2d 1550.

It was contended in the original petitions, in substance, that if counsel had had more time to prepare they would have been able to present a better evidentiary defense to the charge of contempt. Strictly, this is an exaggeration. In view of the immediacy of their filing of the habeas corpus petition, all that petitioners could truly allege was if they had more time to prepare they might have developed their defense. At the appeal level it was further urged that if counsel had had more time to prepare they might have raised some procedural defenses, to wit, the failure of the state to have given them notice of the injunction and the failure to make proper service of the capias informing them of the alleged violation of the injunction and of the issues to be tried.

At the earlier bail hearings we suggested that if the defendants wished to submit affidavits or other indication of what evidence they had been deprived of an opportunity to present, we would receive it. At the hearing on Friday, May 16 affidavits were submitted.[5] The

---

3. Because counsel asserted that they had not interviewed individually many of the petitioners before trial, they were given access to all prior to the May 16 hearing.

4. For an extended analysis of recent cases and the Fourth Circuit rule, see United States ex rel. Mathis v. Rundle, 3 Cir., 1968, 394 F.2d 748.

5. This, of course, enlarged the record over that considered by the Supreme Court of New Hampshire and the district court. The state's attorney stipulated that in the interest of saving time he had no objection insofar as this did not introduce new issues, but that he would object to the

808

affidavits fell into two groups. In one set certain defendants stated that they had never received a copy of the injunction; that they did not hear it being read aloud by the Sheriff or anyone else on May 6 or 7; that they were not served with a copy of the capias and had not seen one. We do not consider either of these procedural matters as indicating actual prejudice. As to the notice of injunction point, we note a conspicuous absence from the affidavits of statements that the affiants did not know on May 6 and 7 that an injunction had been issued or that, whatever its precise terms, the injunction demanded the evacuation of the Hall.[6] Nor do the affidavits warrant supplying an inference that, if the affiants were inside the Hall during the many hours in question, even if the commotion was such that they did not hear the bullhorn they had not learned the facts from their associates. In sum, we do not here see prejudice caused by the lack of continuance.

As to the alleged defect in service of process,[7] again, it does not appear that the defendants did not know the general substance of the charge. The record does not show what occurred at the arraignment, but, in any event we will not draw an inference that petitioners were ignorant of the substance of the charge. Quite apart from this, the record supplies an even shorter answer. At the hearing seeking the continuance counsel informed the court that they understood the defendants had not received copies of the capias. There was nothing to prevent them from pursuing this, or demanding more formalities, if such were needed or thought important.

The second group of affidavits raises a more substantial matter, relating to the question whether some of the defendants were in fact not in the Hall. As to this, counsel told the court at the

motion for continuance that they had leads indicating that some of the defendants could obtain testimony to the effect that they were outside the building, but that they had not had time to pursue it. The prosecutor responded that this was the "usual type of tactic," that there was "no possibility of error" and that this was merely "an attempt to build a defense where a defense does not exist." Regardless of the good faith of the prosecutor, which we assume, we are constrained to say that this was not a proper response, and that it should not have been made and should not have been listened to. The belief of the prosecutor that he has an airtight case is not the measure of whether a defendant should have an opportunity to prepare. When, without addressing itself to the merits of this assertion of counsel, the court denied the continuance, it violated the constitutional rights of every defendant who could have obtained within a reasonable time corroborative testimony, unless, prior to the actual time of trial, he had already had sufficient opportunity to do so.

Prior to considering the affidavits introduced on May 16 on this issue we review briefly the state case presented to the trial court. Before the occupants were removed from the Hall a bus was parked some 150 feet away and a corridor from it to the door of the building was formed by two cordons of police. The occupants were brought through the two lines, each escorted by one or two policemen. No such policeman testified, nor did any member of the cordon itself. The Sheriff testified, "[T]he officers made their corridor to keep the crowd [of onlookers] back * * * so that we would not get anyone or any students that were not in the building into the bus. We wanted just the ones who were in the building." On cross-exami-

raising of totally new issues which petitioners had not presented to the state courts. 28 U.S.C. § 2254. Cf. Needel v. Scafati, 1 Cir., 1969, 412 F.2d 761.

6. A very different question might have been presented had this case been tried

on other than the simple issue whether the defendants were within the building. But the state neither made nor attempted to prove any other act than presence in the building.

7. See N.H.Rev.Stat.Ann. 509.16; 510:2.

nation he testified that the process of bringing the occupants to the bus took about three quarters of an hour; that from where he stood by the front steps he observed the corridor about 90% of the time, but occasionally he addressed himself to what was going on inside; that to his knowledge the corridor was never broken, and no person taken to the bus who had not been inside the building.[8]

We need hardly say that this was something less than an airtight case. Into the gap came petitioners' affidavits. One group of affidavits was from bystanders, to the effect that the corridor had been broken, more than once, either by themselves from pressure of the crowd behind them, or, in one instance, voluntarily to retrieve eyeglasses that had been knocked off, or by others. Another group was to the effect that a few unidentifiable individuals who were outside the corridor got embroiled with the police and were taken into the corridor and to the bus. A third identified five of the petitioners as having been outside the building. Finally, three of these five submitted their own affidavits that they had not been inside.

The identified five, whom we bailed forthwith, have clearly shown that a continuance would have benefited their case. We also believe, on the basis of indisputable facts, that it would be unreasonable to think that obtaining this testimony which came, doubtless, in at least some instances, from persons not identifiable in advance by the individual petitioners, could be effected during one day flanked by two nights. As to the five, not only must the appeal be sustained, but relief must be granted.

We might have had one reservation. We asked counsel if, apart from the Fifth Amendment privilege, they had considered offering testimony by the now identified five that they had been outside the building. They replied that they considered that no petitioner would be credited without corroborating witnesses. For this reason they did not even attempt to interview individually the great majority of the petitioners before trial, believing their time could be spent to better advantage in other areas. We must say, in spite of the gaps in the state's evidence, that counsel's belief as to the unlikelihood of the acceptance of a defendant's uncorroborated testimony under the circumstances of this case was a sensible one.

By the same token the remaining petitioners, who have not been able to show that more time would have enabled them to secure direct evidence, have not in this respect been prejudiced by the early trial. Although it was not argued before us, we have given serious thought to whether such petitioners were prejudiced by being deprived of the effect of testimony showing that other defendants were erroneously apprehended. We do not believe they were. It must be obvious that in spite of such testimony, assuming it to be credible,[9] such errors in the operation of the undertaking to take only occupants of the building to the bus would have been found by a trier of fact to be the exception. Of more immediate importance, although we afforded counsel an opportunity to confer with their clients, none of these remaining petitioners have offered to testify that they were not in the building. Conscious as we are that no inference is to be drawn against a defendant who declines to take the stand, it cannot be gainsaid that he loses the possible advantage of affirmative testimony in his favor. We think of the case where the defendant does not take the stand as

---

8. The Sheriff made one exception; one individual who kept blocking the steps, and who volunteered the information that he had come from inside and should be arrested.

9. The state takes the position that it is entitled to have the district court find whether the proffered testimony was true before the writ can be granted. This would mean that these petitioners must undergo two trials, and win both before they are free. We do not accept this contention.

one where there is an absent witness whose absence is unavoidable: it cannot be assumed that his testimony would have been harmful, but neither can it be assumed that it would have been helpful. Looking at the record in this case as a whole, we are of the opinion that the remaining petitioners have not established prejudice from lack of delay.

As to the five petitioners presently on bail the case is remanded to the district court with instructions to grant the writ unless they are retried in the Superior Court within a specified period of time; as to the remainder, the order dismissing the petition is affirmed.