**John C. RASTROM, Petitioner, Appellee,**
v.
**Allan L. ROBBINS, Warden, Maine State Prison, Respondent, Appellant.**

No. 7789.

United States Court of Appeals,
First Circuit.

April 14, 1971.

John W. Benoit, Jr., Deputy Atty. Gen., for appellant.

Hugh G. E. MacMahon, Portland, Me., with whom Harold E. Woodsum, Jr., Portland, Me., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

The appellee, serving a one to three year sentence for uttering a forged check, in violation of 17 Me.L.R.A. § 1501, sought a writ of habeas corpus in the district court. His contention was that he had been denied his right to the effective assistance of counsel by the refusal of the presiding Justice to allow his newly appointed and inexperienced counsel more than four hours to prepare for trial. The district court granted the writ and the state of Maine appeals.

Appellee [henceforward, petitioner], after being arrested in August 1968, was represented at the Maine District Court arraignment by appointed counsel, whom he subsequently discharged. He remained in jail, pending indictment and trial, intending to defend himself. Shortly before trial, at the request of a Superior Court Justice, an attorney for Pine Tree Legal Assistance, Inc., visited petitioner on two occasions to advise him of his rights to court-appointed counsel. Petitioner, whose demeanor the attorney considered "bizarre", adamantly refused assistance. On the morning of the trial, the legal assistance lawyer listened to the county attorney interview two witnesses, then reported to the court his conversations with petitioner and stated his con-

cern about petitioner's competence to stand trial. At 10 a. m. the case was called and the presiding Justice finally prevailed upon petitioner to accept counsel. The attorney requested by petitioner being unavailable, the court appointed the legal assistance lawyer. The latter informed the court that he was ignorant of the specifics of the case, having talked to petitioner only of his right to counsel, and asked for a continuance. The court continued the case until 2:00 p. m.

During the next four hours, counsel consulted with petitioner and examined the state's file. At 2:00 p. m. counsel moved for a further continuance to "make an independent investigation of the facts, to research the law, to consult with his client, to confer, and to reflect." The motion was denied. Trial commenced, examination of the jury was waived, and petitioner, who did not take the stand, was convicted the same day. Shortly thereafter counsel filed a motion for new trial, based on the denial of his second motion for continuance, additionally informing the court that he had had no prior trial experience, criminal or civil. The motion was denied and appeal was taken, the case being submitted on an agreed statement of facts under Me.R.Civ.P. 74(r).

The Maine Supreme Judicial Court, noting the absence of a transcript, and invoking the familiar principle that one claiming ineffective assistance of counsel has the burden of proving prejudice, held that no prejudice had been shown other than that which was attributable to petitioner's own action in dismissing earlier appointed counsel. The court made no mention of counsel's lack of trial experience. State v. Rastrom, 261 A.2d 245 (Me.1970). The district court, applying the Fourth Circuit presumption based on limited preparation time, discussed infra, held that petitioner had made out a prima facie case of denial of effective assistance of counsel, which the state did not rebut. Rastrom v. Robbins, 319 F.Supp. 1090 (D.Me.1970).

We look upon the case as exceedingly difficult, not perhaps if it is viewed in isolation but if decision is to be helpful in facing similar situations in the future. With the already widespread and increasing provision of court-appointed counsel for indigents, we foresee that counsel, neophytes and seasoned practitioners alike, will be asked to take on litigation in an area in which they have no experience. Lack of experience cannot be a reason for refusing to serve, for there is no adequate reservoir of specialists in criminal law or other complex fields. Yet there must in fairness be some accommodation to a genuine claim of inexperience. It is in this area of tension between the necessity for expedition in the progress of litigation and the requirement of fairness to litigants and their counsel that this case has its setting. With the objective of enabling our decision herein to contribute something to the sensitive and practical reconciliation of these interests, we first discuss our general approach to and requirements for appellate evaluation of claims that limited preparation time resulted in ineffective assistance of counsel. We then consider on the merits the exceptional combination of circumstances presented in this case.

Our Approach to Appellate Evaluation of Limited Preparation Time

A. Our view as to a rule of presumption.

In Megantz v. Ash, 412 F.2d 804, 807 (1st Cir. 1969), we indicated our sympathy with the presumptive approach of Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967), in extreme cases but also cited with approval United States v. Wight, 176 F.2d 376 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950), which held that it was possible to prepare adequately for some cases in as short a time as 15 minutes. On reflection we have concluded not to adopt the Fourth Circuit's presumption.

Final resolution of claims that a defendant was denied effective assistance by late appointment of counsel is neces-

sarily made on an ad hoc basis.[1] As an intermediate aid to analysis, the Fourth Circuit has created the evidentiary rule that a demonstration of inadequate time for preparation establishes a prima facie case of ineffective assistance of counsel which the state must rebut. Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967); Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967); Martin v. Commonwealth of Virginia, 365 F.2d 549 (4th Cir. 1966). While this rule seems to set the Fourth Circuit apart from the other circuits, analysis reveals that the differences between the circuits are more apparent than real. Judge Freedman's thoughtful opinion in Moore v. United States, 432 F.2d 730, 735 (3d Cir. 1970) (*en banc*) recognizes that the Fourth Circuit's preliminary inquiry into the adequacy of the allotted preparation time requires consideration of many of the same elements that must be weighed in determining the prejudicial effect of inadequate preparation time. Most evidentiary presumptions exist because the ultimate fact is very difficult for the party bearing the burden of persuasion to prove; because the establishment of the intermediate fact more probably than not establishes the ultimate fact; and because the intermediate fact is more capable of proof. *See* C. McCormick, Handbook of the Law of Evidence § 309 (1954). The last reason is not present in the Fourth Circuit presumption. It seems specially motivated by the court's desire for a therapeutic rule suggested by its prior experience with state courts' late appointment of counsel. Moreover, despite the language of presumption, the Fourth Circuit cases have involved other evidence of prejudice *in addition* to mere shortage of preparation time.[2] Despite its stated rule, we see little difference between the Fourth Circuit test and the totality of the circumstances test applied in other circuits.[3]

■ To the extent that a difference remains, it may best be described as attitudinal, a lower threshold of tolerance toward stringently limited preparation time. We have on occasion shared that attitude. Megantz v. Ash, *supra* at 806–807. But we are not willing to corset that attitude in a standard applicable to all cases. We recognize that the amount of time required for adequate preparation can widely vary. While an experi-

1. Waltz, Inadequacy of Trial Defense Representation as a Grounds for Post-conviction Relief in Criminal Cases, 59 Nw.L. Rev. 289, 330 (1964). The right to effective assistance of counsel has long been recognized. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Avery v. Alabama, 308 U.S. 444, 60 S. Ct. 321, 84 L.Ed. 377 (1940). But the Supreme Court has refused to adopt a *per se* rule requiring a reversal following every tardy appointment of counsel, Chambers v. Maroney, 399 U.S. 42, 54, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and has suggested that there are no guidelines other than the "circumstances present in every case" as to when the denial of a continuance is error, Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

2. In Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967), defense counsel failed to question the defendant about any of the alleged offenses, one of which appeared to be improperly charged. In Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967), there were defense witnesses who were not located because of inadequate time. In Martin v. Commonwealth of Virginia, 365 F.2d 549 (4th Cir. 1966), the court found several non-frivolous issues which might have been raised had there been time. It is not surprising that these additional prejudicial factors exist. The Fourth Circuit presumption operates when inadequate preparation time is proven, and the time cannot be said to be inadequate without considering why more time was needed.

3. *See, e. g.,* United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3d Cir. 1968); Moore v. United States, 432 F.2d 730 (3d Cir. 1970) (*en banc*); Callahan v. Russell, 423 F.2d 450 (6th Cir. 1970); United States v. Ellenbogen, 365 F.2d 982 (2d Cir. 1966), cert. denied, 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967); United States v. Knohl, 379 F.2d 427 (2d Cir. 1967), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); Mosley v. Dutton, 367 F.2d 913 (5th Cir. 1966), cert. denied, 387 U.S. 942, 87 S. Ct. 2074, 18 L.Ed.2d 1328 (1967).

enced advocate would seldom wish to ready even a simple case for trial in a few hours, he might nevertheless—as many do—perform most competently. We therefore agree with the Third Circuit that concern over short preparation time does not need to be institutionalized in the form of a presumption. Moore v. United States, *supra*.

**B. Our view as to the necessity of transcripts.**

■ Although we reject a presumption of ineffective assistance of counsel based on shortness of preparation time, we realize that appellate review of such claims cannot depend on the winds of whim. The steadying element lies, in our opinion, in the transcript, which, in the great majority of cases is indispensable for effective review.

As has often been said, a perfect trial cannot be the standard; it perhaps exists only as a Platonic ideal. Unless counsel's assistance is so ineffective that a trial is fundamentally unfair, courts are reluctant to uphold ineffective assistance of counsel claims.[4] Balanced judgment as to the existence of elemental unfairness cannot usually be had without seeing the comprehensive framework of the trial that only a transcript reveals.

Whether the claimed inadequacy lies in the legal and factual investigatory phase of preparation, the making of strategic decisions, or in trial tactics,[5] a transcript is likely to be essential. Though perhaps it may seldom supply affirmative evidence of inadequacy, it nevertheless provides a necessary background for intelligent evaluation of the claim. For example, a defendant may

claim error in the investigatory phase in not producing a certain witness, when the record would reveal an overwhelming case against the defendant which would not have been weakened by one more witness. As to strategy, a defendant may claim that counsel should have raised the defense of entrapment, when the record would show that counsel competently raised the inconsistent defense of denying that the defendant ever committed the act. And, of course, when serious tactical errors in the conduct of a trial are alleged, the transcript would be likely to constitute crucial affirmative evidence.

We concede that there may be a few situations where a defendant is blameless for his failure to offer a transcript.[6] But if a transcript is available, only in a situation where counsel is alleged to have done virtually nothing—failed to cross-examine witnesses, failed to argue to the jury—could a defendant safely rely on a claim that counsel had ineffectively conducted a trial without pointing to specific examples in the transcript.

### The Merits of Petitioner's Case

In this case a transcript was not made available and no adequate reason appears for not submitting it. We nevertheless consider petitioner's claim both because this is the first occasion for setting forth our views as to what we would expect and because we so view the potential for prejudice arising from this unusual combination of undisputed circumstances that even a transcript showing a strong case against petitioner and competent examination on the part of his counsel could not negate it.[7]

---

4. *See* Commonwealth v. Bernier, 1971 Mass.A.S. 299, 302–304, 267 N.E.2d 636, for a current and comprehensive review of authorities.

5. *Cf.* Note, Effective Assistance of Counsel for the Indigent Defendant, 78 Harv.L. Rev. 1434, 1435 (1965).

6. Such cases would include those where no transcript was ever produced, or where a reporter's notes or tapes have been de-

stroyed, *e. g.*, Smotherman v. Beto, 276 F.Supp. 579, 581 (N.D.Tex.1967).

7. We take note of respondent's plea that the case should at least be remanded so that the Maine Supreme Judicial Court in the first instance and the district court could have an opportunity to consider it in the light of the transcript. Our view that a transcript could not dissipate the prejudice inherent in the situation has influenced us not to pursue this course.

This combination is one where counsel (1) without prior trial experience of any kind, is (2) called upon to defend a person accused of a crime allegedly committed half a year earlier, (3) carrying a maximum penalty of ten years, (4) with trial to begin in four hours' time. Of more importance are the additional facts (5) that counsel expressed himself as not being prepared to defend adequately and (6) that he, rightly or wrongly, felt that his client was psychologically abnormal. We are not here concerned with the accuracy of counsel's assessment but with its existence as a factor bearing on his ability to elicit cooperation and make rational defense decisions within a short space of time.

■ The Maine court assumed in retrospect that the presiding Justice, in denying the motion for new trial, must have concluded that the issue was not complex and was fairly tried. Perhaps an experienced practitioner would have been able to fairly try this case in the time allotted. But what a test for a tyro. There was the statute on forging and uttering to look up, and the cases relevant to it. There was the problem of communicating to petitioner the prospective testimony he had heard in the morning, and identifying leads, if any, which might help in impeachment. There was the basic problem of ascertaining the facts from petitioner's point of view. If, as has been suggested, petitioner claimed that he was elsewhere on the date of the alleged crime, there were alibi witnesses to search out. Moreover, according to the report from the Portland Police Department, the clerk who received the forged check identified petitioner from a photograph. There was therefore the problem of testing the circumstances under which the photograph was exhibited to the prospective witness. Then counsel faced the problem of his client's mental and emotional capacity.[8] Finally, insofar as the meager record permits us to speculate, there was the list of jurors to scrutinize. All we know is that petitioner, in his motion for a new trial, listed this as an effort which he was foreclosed from pursuing because of the lack of time and that in fact examination of jurors was waived. This may have been, in retrospect, a simple and uncomplicated case. Even with hindsight, however, we see more than enough problems to have fully occupied an experienced attorney for four hours.[9]

One point remains. Respondent asserts a waiver and estoppel theory of sorts based on the petitioner's refusal to accept counsel between the time of his arraignment and the day of his trial. Since there was some suggestion made to the trial Justice that petitioner was unstable, we would think it unwise to hold this behavior against him. See Melanson v. O'Brien, 191 F.2d 963 (1st Cir. 1951); ABA Standards Relating to

---

We also take note that any possible unfairness to either court is outweighed by the unfairness to petitioner of further prolonging this matter. Sentenced to a maximum three year term, petitioner has served some 27 months in prison or jail. Even though much of this time was not credited, the fact remains that petitioner has spent substantially all the time behind bars which his sentence required, allowing for good behavior credits.

8. Respondent argues that defense counsel could easily have obtained a psychiatric examination by moving orally for one before trial. Passing the question whether inexperienced counsel could reasonably be expected to know how and when to move, and the impact of any such motion, we do not view the procedure as one of automatic simplicity. The Maine statute, 15 M.L.R.A. § 101, states that "a Justice of the Superior Court, if requested by the attorney for the respondent, * * * *may* order the respondent examined * * *." [Emphasis supplied.] Such a motion, we understand from Thursby v. State, 223 A.2d 61, 68–69 (Me.1966), must state a reasonable claim and is addressed "to the sound discretion of the court."

9. *See* MacKenna v. Ellis, 280 F.2d 592, 600 (5th Cir. 1960), modified, 289 F.2d 928 (5th Cir. 1961); Smotherman v. Beto, 276 F.Supp. 579, 588–589 (N.D. Tex.1967); Note, The Right to Counsel and the Neophyte Attorney, 24 Rutgers L.Rev. 378 (1970).

Providing Defense Services, 7.2 (1967). As his attempt to persuade petitioner to accept appointed counsel suggests, the presiding Justice was similarly reluctant to find that petitioner had waived his right to counsel. The district court found there had been no waiver. Respondent asserts that he has never claimed that petitioner waived his right to counsel, but rather that he waived something else. Just what that something else is is unclear from the brief. Respondent states that "Since [petitioner's] own doings produced the situation he complained of, that fact had significance in evaluation of the denial of the continuance." This seems to say that a refusal of a continuance requested by newly appointed counsel under circumstances which would be a denial of constitutional rights for a cooperative and rational defendant is permissible in the case of a defendant who has been irascible, eccentric, and difficult. This is really saying that there are dual standards for judging effectiveness of counsel, and that prior obstinacy by a defendant prevents him from complaining of ineffective assistance. If this is not an argument that the right to counsel has been waived, we do not know what it is. But that right not being waived, we see no estoppel principles to be applied against petitioner.[10]

We close, after this extended analysis, by saying that, ironically, it was the dedication of the presiding Justice which led to this issue. He saw the need for petitioner's having counsel. The Justice observed the highest standards in persuading petitioner to accept counsel. In holding that under all the circumstances petitioner was deprived of effective assistance of counsel, we do not at all im-

ply that inexperienced counsel should not be appointed to defend indigents. Indeed we cannot imagine that the increasing demand for representation can be otherwise satisfied. Nor do we mean to say that in such a case as this, where a defendant, unable to make bail, has been jailed for several months, the case should not be speedily heard. But when a case of this nature demands prompt resolution, the court must consider counsel's experience and, where experience is absent or minimal, either grant, if requested, a continuance or appoint more experienced counsel.

Affirmed.

10. We distinguish the cases cited by respondent. Ungar v. Sarafite, *supra*; Neufield v. United States, 73 U.S.App. D.C. 174, 118 F.2d 375 (1941), cert. denied, 315 U.S. 798, 62 S.Ct. 580, 86 L. Ed. 1199 (1942); Torres v. United States, 270 F.2d 252 (9th Cir. 1959), cert. denied, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960); United States v. Valdez, 418 F.2d 363 (5th Cir. 1969);

United States ex rel. Gallo v. Follette, 270 F.Supp. 507 (S.D.N.Y.1967). All involved considerably more preparation time than four hours; all involved other circumstances, not present here, such as a strong likelihood that a defendant had attempted deliberately to delay the trial. None involved the combination of circumstances present in this case.