Julius **COTTMAN**, Petitioner,

v.

Robert **DONNELLY**, Superintendent, Massachusetts Correctional Institution, at Walpole, Respondent.

Misc. Civ. No. 72–125–T.

United States District Court,
D. Massachusetts.

Aug. 14, 1975.

Julius Cottman, pro se, Robert Erwin Silver, Boston, Mass., for petitioner.

David A. Mills, Asst. Atty. Gen., Boston, Mass., for respondent.

## OPINION

TAURO, District Judge.

Julius Cottman is currently confined at M.C.I. Norfolk after having been convicted in 1966 on state charges of kidnapping and armed robbery.[1] He now brings this action seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleging that: (1) He was deprived of effective assistance of counsel throughout the state proceedings which led to his convictions and (2) the failure of the trial court to remove a watch from the view of the jury, after it had been suppressed as evidence, was so prejudicial as to deprive him of due process.

### I

Following an evidentiary hearing on Cottman's petition, the parties submitted memoranda and proposed findings of fact. On the basis of the testimony and exhibits introduced during the hearing, this court makes the following findings of fact.

At approximately 1:00 a. m. on the morning of March 15, 1966, Richard Carl was sitting in his parked station wagon on Washington Street, between Essex Street and Haywood Place, Boston. Carl was alone, seated behind the wheel, waiting for the customers to leave the nearby Snowbar Cafe so that he could resume his carpentry work there.

Suddenly, the two front doors of the station wagon opened and three men forced their way into the front seat. One of them, Theodore Miller, entered the car from the driver's side, pushed Carl aside, and sat behind the wheel. The other men entered the car from the passenger's side and sat to Carl's right. The one beside Carl held a razor to his throat. The other, allegedly Julius Cottman, jabbed Carl with a gun. With all four men seated in the front seat, Miller started the car and drove off.

The car sped through the streets of Boston, onto the South East Expressway, to the Massachusetts Turnpike, to Allston and Dorchester, eventually approaching the intersection of Broadway and Albany streets. There the car slowed and Cottman allegedly started to get out. As he did so, Carl escaped.

1. There is some confusion in the record on the exact nature of Cottman's sentence. The joint pre-trial memorandum indicates at one point that Cottman was indicted for unlawful use of a motor vehicle and is serving a sentence on this related charge as well. Paragraph ·I, page 1. At a subsequent point, however, the memorandum indicates that no sentence was imposed on this charge. Paragraph (c), page 2. The state docket sheets corroborate this latter interpretation.

Cottman allegedly returned to the car and drove off with the others.

Carl immediately reported the incident to the Boston Police. Within hours, Cottman and Miller were apprehended and identified by Carl as his captors. Later, on the afternoon of the 15th, a search warrant was executed on Miller's apartment where the police seized a Timex watch later claimed by Carl as having been stolen from him during the ride.

Both Cottman and Miller were indicted on charges stemming from the incident on April 4, 1966. They were arraigned on April 5, 1966, at which time Cottman was represented by Attorney Joseph Oteri of Boston, who had been retained by petitioner's mother. For reasons immaterial to this case, Oteri withdrew his representation and Attorney Bernard Bradley of the Massachusetts Defenders Committee was appointed as petitioner's counsel on May 3, 1966. Bradley filed a motion for a bill of particulars ten days later.[2] No action was ever taken on this motion and no other pre-trial motions were made on Cottman's behalf.

Bradley continued as Cottman's counsel of record until October 16, 1966. On that day he withdrew, due to a possible conflict of interest stemming from the Committee's representation of Miller. On the same day, Mr. George Carney was officially appointed to represent Cottman.[3]

When Carney was appointed, he already had some exposure to the case. On October 10, 1966, the Chief Justice of the Superior Court asked Carney to speak to Cottman. Carney did so immediately, but soon reported to the Chief Justice that he could not go forward that day because he could not "make heads or tails" of Cottman's story. Accordingly, the trial was continued until October 17.[4]

During the intervening week, Carney visited Cottman at the Massachusetts Correctional Institution at Walpole.[5] At that time Cottman told Carney that he had picked up a man on the corner of Haywood Place and Washington Street, driven him to Adams Square via the Massachusetts Turnpike and took his watch and cash. Tr. 92. Prior to trial, Carney also conferred with counsel for Cottman's co-defendant, Theodore Miller, about the facts of the case, Tr. 96, a possible identification question, Transcript of Evidentiary Hearing at 98 [hereinafter Tr.], and the search warrant for Miller's apartment. Tr. 103.

Prior to the first day of trial, Carney advised Cottman to plead guilty, Tr. 87–88, 94. When Cottman refused and the trial proceeded, Carney conducted Cottman's defense. On the first day he cross-examined the key Commonwealth witnesses, Trial Transcript, First Day, while on the second day he interviewed potential alibi witnesses, Tr. 67–79, 88, called those witnesses to the stand, Trial Transcript, Second Day, and made a

2. Cottman's testimony at the evidentiary hearing indicates that it was Oteri who filed this motion, the only pre-trial motion filed on Cottman's behalf. Tr. 32. The joint pre-trial memorandum supports this claim. Last ¶, p. 2. The docket sheets, however, indicate that the motion was filed ten days after Oteri withdrew.

3. All parties, and the docket sheets, seem to agree on the dates. October 16, 1966, however, was a Sunday.

4. At the evidentiary hearing, Cottman claimed that he first saw Carney the first day of trial. However, Carney's detailed

recollection of the October 16th meeting is particularly impressive and is corroborated by the state docket sheets which indicate that Writs of Habeas Corpus were issued for both Cottman and Miller several days before trial. Carney did not file his official appearance, however, until trial began.

5. Cottman has no recollection of this meeting and his visitor cards do not reflect it. Tr. 34, 53. Exhibits Accompanying Commonwealth's Letter of April 25, 1975. The visitor cards, however, seem to have been kept rather informally and Carney's careful testimony on this point was also particularly credible.

closing statement to the jury. *Id.* The jury then retired and later convicted the defendants on all charges.

On October 19, 1966, prior to sentencing, Cottman made a pro se oral motion for a new trial, alleging "incompetence of counsel." At that time he also informed the court that he was discharging Mr. Carney for "incompetence." Transcript of Hearing on Motion for a New Trial at 3–4; Joint Pre-trial Memorandum at 3.[6] The motion was denied.

Subsequently, Cottman and Miller, again acting pro se, filed another motion for a new trial. Among other things, this motion challenged the right of the Commonwealth to exercise preemptory challenges to exclude three blacks from the jury. After a hearing on May 29, 1967, the motion was denied.[7]

■ Approximately two years later, on May 12, 1969, Cottman and Miller, again acting pro se filed a Writ of Error with the Massachusetts Supreme Judicial Court in which they raised the issue of effective assistance of counsel.[8] Joint Pre-trial Memorandum at 4. On June 6, 1969, the Massachusetts Defenders Committee received notice of its appointment as counsel for Cottman and Miller. Tr. 13. On June 12, it filed a motion to revoke that appointment in both cases, Tr. 16, but after a hearing on June 25, the motion was denied. Tr. 13.

No further action was taken in the case until June 30, 1970, when the Defenders Committee filed a second motion to revoke its appointment, which was also denied soon thereafter. Tr. 14. In October 1970, the Committee wrote the Supreme Judicial Court indicating its intention to file a memorandum. Tr. 14–15. No memorandum was ever filed. Tr. 15. Indeed, no further work was done on the file until June 1972, when the Committee inquired of the Clerk's office as to the status of the case, Tr. 16, and learned that the case had been dismissed, without prejudice, for the petitioner's failure to prosecute. Plaintiff's Exhibit 2; Tr. 16–17. Some months later, Cottman filed the instant petition for a writ of habeas corpus.

It is worthy of note that, during much of the time the file was open in the Committee's office, the transcripts were not in its possession. In August 1970, Cottman's mother personally visited the Committee's offices and was told that no further work was planned on the case. Tr. 71. She then took the transcripts in an attempt to procure other counsel. After her lack of success in that effort, the transcripts were returned in November 1971. Tr. 20. A few months later the file was closed by the Defenders Committee.

## II

■ Initially, the Commonwealth argues that the petition should be dismissed for the failure of Cottman to exhaust his state remedies. Its contention is that no Massachusetts appellate court has passed upon the merits of petitioner's claims, and that by denying his Writ of Error "without prejudice" the

---

6. Carney testified at the evidentiary hearing that he was fired at the start of the second day of trial. Tr. 106–09, although as his testimony progressed, he did indicate some confusion on the point. Tr. 108. In any event, the transcript of the second day of trial does not support his assertion. *See* Part III, B, *infra.*

7. The docket sheets indicate that appeals were taken from the convictions. The record, however, does not disclose the outcome of those proceedings.

8. Under Massachusetts practice a petitioner may seek a Writ of Error to collaterally review a criminal conviction in which he claims errors of law and fact plainly appearing from the record. Mass.Gen.Laws.Ann. ch. 250, § 9; Persampieri v. Commonwealth, 343 Mass. 19, 175 N.E.2d 387 (1961). *Accord,* Commonwealth v. Gilday, 357 Mass. 775, 258 N.E.2d 744 (1970). The Writ may be brought at any time, Mass.Gen.Laws Ann. ch. 250, § 10, and, in certain situations, lies with a Justice of the Supreme Judicial Court. Mass.Gen.Laws.Ann. ch. 250, § 11. Cottman's writ has not been introduced into evidence in this proceeding. Respondent, however, concedes that it raised the ineffective assistance claim. Respondents' Proposed Findings of Fact at 5.

Massachusetts Supreme Judicial Court remains a state forum in which the petitioner may still seek relief. Under the unique circumstances presented here, however, the needs of judicial efficiency, and the demands of due process, make it impossible for this court to observe the policy of comity which would normally require it to stay its hand.[9]

The facts of this case closely parallel those of *Odsen v. Moore,* 445 F.2d 806 (1st Cir. 1971). *See also St. Jules v. Beto,* 462 F.2d 1365, 1366 (5th Cir. 1972); *United States ex rel. Goodman v. Kehl,* 456 F.2d 863, 869 (2d Cir. 1972). In *Odsen,* a state prisoner, convicted in May 1966, petitioned the Massachusetts Supreme Judicial Court for a Writ of Error in 1968. That Court appointed the Massachusetts Defenders Committee as counsel, but after almost three years of Committee inaction he brought a federal habeas claim. Although the Court of Appeals remanded the petition for a further evidentiary hearing, it was clear in its conclusion that an inordinate delay resulting from dilitory counsel and accompanied by attempts by petitioner to bring his complaint to the state courts and his attorneys would itself be a violation of due process. Under these circumstances, the court held that it could not countenance further delay by requiring a habeas petitioner to exhaust his state remedies.

The facts of the instant case, as revealed at the evidentiary hearing, are at least as compelling as those in *Odsen.* Here, the events giving rise to Cottman's petition occurred almost nine years ago, only a few months after petitioner's conviction in *Odsen.* During this period, Cottman had made repeated attempts to bring his complaint to the attention of the Superior Court and the Supreme Judicial Court. While his Writ of Error was pending for approximately three years, appointed counsel inexplicably took no action except to make two attempts to be relieved of the case and to file a letter indicating its intention to submit a brief. No brief was ever filed and during much of this time, the transcripts were not even in counsel's office; the Committee having loaned them to Cottman's mother while she attempted to find new counsel on her own.

The Commonwealth would distinguish *Odsen* by pointing out that the petitioner in that case conducted considerable correspondence with both the Defenders Committee and the court in an attempt to spur them to action prior to bringing his Federal habeas claim. The factual distinction between the self-help efforts of Cottman and Odsen, however, is merely one of degree rather than kind. Cottman's efforts and those of his family, while perhaps less vigorous, were sufficient to bring the matter to the attention of both court and counsel in the aborted state proceedings. As a pro se litigant, acting without funds and apparently without knowledge of appellate procedure, his actions were sufficient to pass muster under *Odsen.*

### III

With respect to the merits, Cottman's ineffective assistance claim is two-fold. First, he argues that his trial counsel was not afforded adequate time to prepare his defense. Second, he claims trial counsel failed to represent him on the second day of trial. In view of the different issues which are raised by each claim, they will be treated individually.

### A.

 A criminal defendant's right to counsel entitles him to the consciencious services of a competent attorney throughout the proceedings against him.

---

9. The exhaustion doctrine, and its statutory codification, 28 U.S.C. § 2254, represent, of course, a matter of policy, not jurisdiction. Fay v. Noia, 372 U.S. 391, 415–26, 434–35, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The difference is especially significant in a habeas case coming to the federal courts after "abortive state proceedings." *See generally* C. Wright, Law of the Federal Courts § 53, at 215–18.

*United States v. Wight*, 176 F.2d 376 (2d Cir. 1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). A perfunctory appearance or an appointment made under circumstances where counsel is unable to effectively prepare his case do not meet the test. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Yet, as the Supreme Court has noted "The Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial." *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940).

■ The acid test of any claim of inadequate preparation time lies then in the character of the resulting proceedings, *United States v. Wight*, 176 F.2d 376, 379 (2d Cir. 1949), with the particular facts of each case determining its outcome. *Baldwin v. United States*, 260 F.2d 117 (4th Cir. 1958). *See Rastrom v. Robbins*, 440 F.2d 1251 (1st Cir. 1971). *See generally Callahan v. Russell*, 423 F.2d 450, 453 n.3 (6th Cir. 1970); Finer, Ineffective Assistance of Counsel, 58 Cornell L.Rev. 1077, 1089–92 (1973). "[U]nless the purported representation was such to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds for the issuance of a writ of habeas corpus . . .." [10] *United States v. Wight*, 176 F.2d 376, 379 (2d Cir. 1949).

In this case, George Carney, an experienced trial lawyer, entered the case on behalf of Cottman at the request of the court one week before trial. At that time, he interviewed Cottman and reported to the court that he was unable to understand Cottman's story. A week's continuance was granted during which time Carney interviewed Cottman at Walpole in an attempt to clarify Cottman's version of the facts.

On the day of trial Carney interviewed Cottman once again. He also interviewed the victim himself, and, in addition, spoke to counsel for Cottman's co-defendant. Based on his evaluation of all the evidence, Carney recommended a guilty plea. When Cottman refused, the trial began.

During the first day of the trial, Monday, October 17, Carney cross-examined five of the Commonwealth's witnesses. These included the victim, as well as certain police officers who investigated the incident, interrogated Cottman, and witnessed the victim's station-house identification of the defendants.

Prior to the second day of trial, Tuesday, October 18, Carney interviewed Cottman's mother and fiance. After the Commonwealth rested that morning, Carney called them to the stand in an attempt to present an alibi defense for his client. They testified that Cottman was with them either prior to or during the attack on Carl. After examination of these witnesses the evidence was closed, Miller resting without offering a defense. All three attorneys made closing arguments to the jury.

■ On these facts, Carney's representation of Cottman can hardly be termed perfunctory or below constitutional minimums. He was an experienced trial attorney called upon to represent a defendant in a case which was not particularly complex and in which the Commonwealth's evidence was particularly strong. After considerable difficulty, he was able to get his client's version of the facts, which basically corroborated the Commonwealth's evidence. Nevertheless, after his client decided to go to trial, he conducted a vigorous defense. He cross-examined witnesses. He interviewed and called the only two individuals who his client indicated would support Cottman's alibi. He made a closing statement to the jury.

---

10. Indeed, in the First Circuit, a short period of time between appointment and trial does not even give rise to a presumption of ineffective assistance. Rastrom v. Robbins, 440 F.2d 1251 (1st Cir. 1971).

Cottman attached great weight to the fact that Carney filed no pre-trial motions on his behalf, even though counsel for his co-defendant successfully moved to suppress a Timex watch which the Commonwealth had attempted to introduce into evidence. *See* Part IV, *infra.* The decision to make pre-trial motions, of course, is generally a matter of trial tactics, not reviewable as part of an ineffective assistance claim. *See, e. g., Barba-Reyes v. United States,* 387 F. 2d 91, 93 (9th Cir. 1967). Moreover, Carney's failure to make a similar motion to suppress might be explained by the fact that the watch was the fruit of an illegal search of *Miller's* apartment, depriving Cottman of standing to raise the Fourth Amendment issue. *But cf. Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

If this had been a complex case, involving difficult legal issues and an involved set of facts, or if Carney had been a neophyte lawyer, *see Rastrom v. Robbins,* 440 F.2d 1251 (1st Cir. 1971), Cottman's contentions might be more compelling. But this case was a relatively simple one, involving a straightforward fact pattern and basic charges of kidnapping and robbery, with the victim as an identifying eyewitness. Under the circumstances, Carney's preparation for, and representation at trial, at the very least, met constitutional minimums.[11]

### B.

At the evidentiary hearing before this court, Carney testified that Cottman fired him before the trial resumed on October 18. Accordingly, Cottman now argues that because no other attorney was appointed on his behalf, he went totally unrepresented on the second day of trial.[12]

The problem with this theory, is that the record simply does not support Carney's recollection on this particular point. The transcript of the second day of the trial indicates that Carney called two witnesses and then made a closing statement to the jury. Nothing in the record challenges that report.

In dealing with a claim of ineffective assistance of counsel made in a petition for habeas corpus, the Court of Appeals has noted that "a transcript is likely to be essential." *Rastrom v. Robbins,* 440 F.2d 1251, 1254 (1st Cir. 1971). It is the transcript on which the court must rely in making its findings of fact and in elucidating the manner in which the petitioner's defense was conducted. Because the transcript of Cottman's trial so clearly contradicts Carney's memory of events, which occurred almost ten years ago, Cottman's second claim of ineffective assistance must also be rejected.

### III

In the course of its investigation of Carl's kidnapping, the Boston Police Department obtained a search warrant on Miller's apartment pursuant to which it found a Timex watch. At trial, the watch was marked for identification and Carl identified the watch as the one which was taken from him during the course of his abduction. At a *voir dire* on the second day of trial, however, the watch was suppressed because of the insufficiency of the affidavit which accompanied the warrant for Mill-

---

11. Even assuming that Carney's preparation time had been limited to a few hours before trial, as Cottman maintains, *see* notes 4 & 5 *supra,* the quality of his performance at trial was sufficient to withstand challenge on grounds of inadequacy.

12. This issue was apparently first raised by Carney's testimony at the evidentiary hearing, for in Cottman's amended petition for a writ of habeas corpus, as well as in the Joint Pre-Trial Memorandum, the date of Carney's firing is claimed to be October 19, 1966. No further amendments to the pleadings have been requested. Yet in view of the fact that the parties have considered this issue as properly raised in the pleadings, the court will deem the pleadings further amended to include it. Fed.R.Civ.P. 15(b).

er's apartment. At the conclusion of the *voir dire*, the following colloquy took place:

The COURT: The record will show that at the conclusion of the *voir dire*, the Court finds that the affidavit is insufficient to comply with the statute in that it is stated the source of the information but failed to give any of the facts, and for that reason any evidence or rather the Timex watch which is the only thing in question here is suppressed.

Mr. FANDEL [counsel for Miller]: May I move now that the watch be removed as an exhibit?

The COURT: It is not an exhibit.

Mr. FANDEL: It is marked for identification?

The COURT: Well, just take it and put it aside, it has not been used for any evidence. All you are going to do is bring more attention to it.

(Whereupon the jury returned.)

Trial Transcript at 185–86. At the close of the evidence, the trial judge instructed the jury as follows:

Now, in the course of the trial, you have listened to witnesses and there have been certain exhibits permitted into evidence. You will base your verdict upon the facts as you determine them based on that testimony and on these exhibits, and on no outside matters.

Trial Transcript at 219. Cottman now argues that, by his failure to remove the watch from the courtroom and the inadequacy of his instructions to the jury, the trial judge did not take sufficient precautions to ensure that the jury would not

consider a proferred exhibit which never came into evidence.[13]

As has so often been noted, a criminal trial, even in the best of circumstances, is a difficult affair to manage. *United States v. Jorn*, 400 U.S. 470, 479, 91 S. Ct. 547, 27 L.Ed.2d 543 (1971). Unforeseen problems arise during the course of any proceeding which require on-the-scene assessment and instant action by the judge. That is why a trial judge is afforded considerable discretion in the conduct of a trial and the physical management of the courtroom. *Cf. Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). The disposal of exhibits marked for identification, but not introduced into evidence, is surely one of the matters falling within the ambit of that discretion.

 In this case, the trial judge excluded from evidence a watch, which had been marked for identification, and which the jury had already seen. The record does not reveal precisely how he handled the situation: whether he decided to remove the watch totally from the jury's sight, or merely to leave it in an inconspicuous place so that its total absence from the courtroom would not be noticed. In either event, it is clear that his intention was to avoid further attention being given to the watch. Trial Tr. 185–186. Absent some objection from counsel, or clear testimony from others who were present on the scene, this court cannot say that the trial judge—who was in the best position to analyze the situation—acted unreasonably or abused the discretion traditionally afforded him in this area.

 Moreover, even if the trial judge's response to the situation was

13. This issue was raised in Cottman's second motion for a new trial in Superior Court. Transcript of Motion for a New Trial at 5–6, and possibly in the Writ of Error. In view of the matters discussed in Part II of this opinion, the court will treat this matter as properly before it.

The Commonwealth does argue that, in any event, Cottman has no standing to raise this claim. Its theory is that because he had no

standing to move to suppress, he could not be prejudiced by the presence of the watch in the courtroom. Although the Commonwealth's contention may perhaps be helpful on the merits, it doesn't address a standing question. Cottman's basic complaint is that the entire proceeding was tainted because of what the judge actually did. It seems clear that this is a matter he is entitled to raise.

somehow inadequate, his subsequent instructions cured the defect. He clearly instructed the jury that it was to consider only exhibits which were "permitted into evidence," and to ignore "outside matters." Perhaps another lawyer or judge may have phrased them differently, but the instructions were sufficient to explain to the jury what it could and could not take into account.

Accordingly, it is hereby ordered that petitioner's request for a Writ of Habeas Corpus be, and the same hereby is, denied.