UNITED STATES ex rel. Jack LOPINSON F–0276

v.

Ronald MARKS, Superintendent, State Correctional Institution at Graterford.

Civ. A. No. 74–3143.

United States District Court,
E. D. Pennsylvania.

March 8, 1976.

---

Oscar Spivack, A. Charles Peruto, Philadelphia, Pa., for relator.

F. Emmett Fitzpatrick, Dist. Atty., Bonnie B. Leadbetter, Deborah Glass, Asst. Dist. Attys., Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

In 1965, a jury found relator guilty of the murders of his wife, and business partner. His accomplice Frank Phelan, pleaded guilty to both murders and was the principal witness against relator. The petition alleges ten grounds in support of relief. The United States Magistrate concluded that all ten grounds were without merit and recommended dismissal of the petition without hearing. As to eight of these,[1] after an independent review, we hereby adopt the report

---

1. Numbers 1–5 and 7–9 in paragraph 12 of relator's petition.

and recommendation of the United States Magistrate. With respect to the remaining grounds, we held an evidentiary hearing on October 6, 1975. After consideration of the evidence and arguments of counsel, we will dismiss the petition.

## I. *The Alleged Wiretaps*

■ Relator asserted as one ground for relief that before trial he was denied tapes and/or transcripts of certain conversations between Frank Phelan and himself which had been obtained as the result of police wiretaps. At the hearing of October 6, 1975, there was absolutely no evidence presented which suggested the existence of any such wiretaps. The lone witness called by relator, Richard Sprague, Esquire, who was the prosecutor in the murder trial, categorically denied any knowledge of any interceptions or wiretaps involving relator and Frank Phelan. In the absence of any facts to support this ground, we conclude that it is meritless.

## II. *The* Brady *Argument.*

■ In his sixth ground, relator states:

"The prosecutor refused to disclose to Petitioner evidence and reports in the prosecutor's possession, which were favorable to the defense, concerning the Commonwealth's chief witness, Frank Phelan, the alleged co-conspirator and accomplice of Petitioner. Despite Petitioner's requests, before and after Frank Phelan's testimony, the Trial Court refused to allow Petitioner to retain a psychiatrist and refused to direct the prosecutor to turn over to the defense psychiatric reports on Frank Phelan. The prosecutor also

withheld all other information in his possession concerning Frank Phelan that was or may have been helpful to the defense."

In essence this ground may be distilled into two subparts. The first concerns the state court's refusal to appoint a psychiatrist to examine Frank Phelan. This ground was dealt with fully and fairly by the Pennsylvania Supreme Court, *Commonwealth v. Lopinson,* 427 Pa. 284, 305, 234 A.2d 552 (1967), and by the United States Magistrate in his report. We are satisfied that there was no constitutional error.

Secondly, embodied in the sixth ground is the question of whether the prosecution withheld information in its possession which would have been helpful to the relator. Since no evidence has been demonstrated to show that there was anything potentially helpful other than the psychiatric reports on Frank Phelan, the issue boils down to this: Were the refusals by the prosecutor and the trial court to make available to relator, upon his request, psychiatric reports concerning Frank Phelan a violation of the due process clause of the fourteenth amendment as explicated in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny?

■ After a thorough review of the state court record we are convinced that relator has never given the Supreme Court of Pennsylvania a "fair opportunity to consider" this claim as required by 28 U.S.C. § 2254(b) (1970)[2] and *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438, 444 (1971).[3]

■■ In his petition and at oral argument, relator has directed us to certain portions of the state court record where

2. The text of the statute provides:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

3. Counsel for respondent has not seen fit either to raise or, after we raised it at oral argument, to brief the question of exhaustion of state remedies. Nevertheless, we feel justified in raising it on our own. Counsel for relator were put on notice of our concern about exhaustion of the *Brady* issue at oral argument. They had a full opportunity to demonstrate that the issue had been raised in state court both at oral argument and in their subsequent brief.

he asserts this ground was raised. In his petition, relator refers to a number of motions made to the lower court before, during and after trial. These are of no help to relator since exhaustion requires presentation of the issue to the highest state court from which relief is available. *See Williams v. Missouri Department of Corrections*, 463 F.2d 993, 995 (8th Cir. 1972); *Thompson v. Peyton*, 406 F.2d 473, 474 (4th Cir. 1968). Similarly relator refers to his petition for a writ of certiorari to the United States Supreme Court. However, the mere inclusion in a petition for writ of certiorari of a ground not considered by the United States Supreme Court and never presented to the state supreme court does not satisfy the requirement of state court exhaustion.

Relator points to his appeal to the Pennsylvania Supreme Court and also his petition for re-argument. An analysis of the papers reveals quite clearly that the *Brady* argument being pursued here was not raised there. Point 8 in the Brief for Appellant before the Supreme Court of Pennsylvania is headed: "The Court erred in refusing to permit a defense psychiatrist to examine the witness Frank Phelan and in refusing to investigate the question of his competency." This is the closest relator comes to raising his *Brady* argument in his brief; our judgment is that it is insufficient.[4]

In his petition for re-argument, relator quotes a portion of the Pennsylvania Supreme Court's opinion and then proceeds to demonstrate certain "misapprehensions" on the part of the court:

"1. Appellant's Counsel were prohibited by the Court from interviewing

Dr. John G. Torney, the psychiatrist appointed by the Court to examine Phelan until March 1, 1965, when the trial was practically over and even at that time Dr. Torney was directed not to furnish Counsel with a copy of the report he had previously given to the Court.

\*     \*     \*     \*     \*     \*

"Perhaps, in a case where the psychiatric aspects are minimal or remote the rulings of the Trial Judge might be understandable. But in a situation where the mental condition and competency of the star witness and alleged murderer permeates all the proceedings it must be deemed an abuse of discretion for the Court to deny defense counsel the tools necessary to explore the situation."

*Commonwealth v. Lopinson*, Petition for Re-Argument 18–19 (Sup.Ct.Pa. Oct. 6, 1967).

Again, we do not feel this sufficient to present fairly the *Brady* claim which relator urges upon us now.

At oral argument counsel for relator also urged that this ground had been raised in a petition to the trial court for leave to file supplemental reasons in support of motions for a new trial and in arrest of judgment. The petition was denied by the trial court without hearing. Subsequently, an appeal was taken to the Pennsylvania Supreme Court, and this appeal was quashed, without opinion.

■ . Assuming arguendo that the *Brady* issue was adequately raised in the petition,[5] it is clear that the supreme

---

4. In subpoints under the heading, relator listed a number of considerations which prompted his request to have a psychiatrist appointed to examine Frank Phelan. One of the considerations listed was that Phelan had been examined by the court psychiatrist and that although the prosecution received copies, they were denied to the defense. Apart from the fact that this was raised only in support of the argument that the court should have appointed a psychiatrist, it is still insufficient to raise the *Brady* issue of the nondisclosure of psychiatric reports in the prosecution's possession. It

does not set forth all of the facts underlying relator's *Brady* claim. Further, the Supreme Court in *Picard v. Connor, supra*, specifically rejected the notion that state courts should be expected to apply unstated controlling legal precedent to a set of facts outlined by a defendant.

5. Paragraph 6 of the petition for leave to file supplemental reasons stated:

"At the time of the filing of the said petitions, defense counsel was denied access to any medical records showing the diagnosis

court was never faced with the merits of the supplemental reasons when it quashed the appeal. An examination of the papers before the supreme court makes clear that the appeal was quashed on procedural grounds, not on the merits. This is not sufficient to satisfy the exhaustion requirement. *Harris v. Superior Court*, 500 F.2d 1124, 1128–29 (9th Cir. 1974); *see McMichaels v. Hancock*, 428 F.2d 1222, 1223 (1st Cir. 1970). It bears mention that throughout all of the proceedings mentioned above, relator was represented by experienced and well known criminal defense counsel.

The delicate federal-state relationship mandates that federal courts give state courts an initial opportunity to pass on alleged constitutional violations. The Pennsylvania Supreme Court has been in the forefront in its recognition and protection of the constitutional rights of prisoners. While in some extreme cases circumstances may be such that the court will make a final determination despite a failure to exhaust, this is not such a case. *See, e. g., Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975) (by implication); *Cottman v. Donnelly*, 398 F.Supp. 1086, 1089–90 (D.Mass.1975).

Relator has available to him an effective method for raising his *Brady* claim in state court. The Post Conviction Hearing Act, 19 P.S. § 1180–1 *et seq.* affords relator an opportunity to raise his recently crystallized *Brady* argument before the state courts. We wish to emphasize that we express no opinion whatsoever as to any merit or lack thereof in respect to the *Brady* claim. Indeed, to do so would be presumptuous of us at this time. We should also say that once we recognized the existence of an exhaustion problem, we no longer pursued the underlying facts.

Since we conclude that state remedies have not been exhausted on the *Brady* claim, and that there is no merit to relator's other claims, we will dismiss the petition.[6]

---

of the mental condition of the said Frank Phelan."

**6.** This conclusion of non-exhaustion of one ground does not require that we dismiss the entire petition out of hand. Comity need not stay our hand as to those grounds in a multiground petition, where there has been exhaustion and the claims are clearly without merit. *See Singleton v. Estelle*, 492 F.2d 671, 676–77 (5th Cir. 1974); *Tyler v. Swenson*, 483 F.2d 611, 614–15 (8th Cir. 1973); *United States v. Myers*, 327 F.2d 174, 183 (3d Cir.), *cert. denied*, 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 52 (1964).