Roy James CROW, Petitioner,

v.

Ira M. COINER, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. C-69-78-E.

United States District Court,
N. D. West Virginia.

Feb. 22, 1971.

Richard W. Cardot, Elkins, W. Va., (Court appointed) for petitioner.

Chauncey H. Browning, Jr., Atty. Gen. of West Virginia, Willard A. Sullivan, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MEMORANDUM ORDER

MAXWELL, Chief Judge.

Petitioner, Roy James Crow, presently is serving an indeterminate sentence of

not less than one year nor more than ten years in the West Virginia State Penitentiary at Moundsville, West Virginia. He was sentenced by the Circuit Court of Tucker County, West Virginia, on October 11, 1966, upon his plea of guilty to a charge of grand larceny.

In accordance with the provisions of 28 U.S.C.A. § 2241 et seq., Petitioner seeks habeas corpus relief in this Court. This petition follows the denial of post-conviction relief by the Tucker County Circuit Court, which conducted an evidentiary hearing, and by the West Virginia Supreme Court of Appeals. After examining the present petition this Court ordered Respondent to answer, appointed counsel and conducted a plenary hearing.

Petitioner and his court appointed attorney have alleged several infirmities in the conviction, some of which appeared in the petition, while others initially were asserted either in the pretrial memorandum or at the plenary hearing. The individual issues, which are not considered in the same order as presented by Petitioner, are: (1) improper extradition, (2) improper waiver of a juvenile to an adult court, (3) failure to warn Petitioner of his constitutional right to remain silent, (4) absence of counsel at the preliminary hearing, (5) invalid indictment, (6) involuntary plea, (7) Petitioner's one to ten year sentence constituted cruel and unusual punishment, and (8) ineffective assistance of counsel.

Upon inspection of the petition, Respondent's answer, the exhibits and the evidence presented at Petitioner's hearing, this Court is of the opinion that Petitioner's claims are without merit.

## FACTS

Despite Petitioner's age he has experienced several encounters with welfare and law officials in West Virginia and other states. These early problems culminated in Petitioner's detention at the State Forestry Camp for Boys at Davis, West Virginia. While serving this sentence at the camp, Petitioner and another inmate escaped, stole a truck and abandoned it seventy miles away. Petitioner later was apprehended in New Orleans, Louisiana, and returned to Tucker County, West Virginia. On July 23, 1966, the Juvenile Court of Tucker County, upon determining that Petitioner lacked funds to employ counsel and that Petitioner was over sixteen years old, appointed counsel for Petitioner, refused to accept jurisdiction and transferred the case to the Circuit Court of Tucker County for further proceedings. An indictment charging Petitioner with grand larceny was returned on October 4, 1966. On the following day the circuit court referred the case back to the juvenile court, which by a separate order again refused to accept jurisdiction and returned the case to the circuit court.

## ISSUES

Petitioner's initial contention is that state officials failed to follow available and proper extradition procedures in returning Petitioner to West Virginia from Louisiana. Even assuming the truth of this allegation Petitioner has failed to state a ground for relief that is cognizable in federal habeas corpus. It is settled that a court's jurisdiction to try a defendant is not destroyed by improper extradition. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); Justice v. Coiner, No. 13,792 (4th Cir. Oct. 13, 1966).

Secondly, Petitioner alleges that the Juvenile Court of Tucker County waived jurisdiction to an adult court in a manner contrary to the laws of West Virginia and to federal constitutional standards.

W.Va.Code ch. 49, art. 5, § 3 (Michie 1966), gives the juvenile court exclusive jurisdiction over juveniles except in cases involving capital offenses. This section, however, relates only to juvenile delinquency charges and not to criminal offenses. State ex rel. Slatton v. Boles, 147 W.Va. 674, 130 S.E.2d 192 (1963); Wade v. Skeen, 140 W.Va. 565, 85 S.E.2d 845 (1955). Possible disposi-

tions by a juvenile court are set out in W.Va.Code ch. 49, art. 5, § 14 (Michie 1966), which provides:

With a view to the welfare and interest of the child and of the State, the court or judge may, after the proceedings, make any of the following dispositions:

\* \* \* \* \* \*

(3) If the child be over sixteen years of age at the time of the commission of the offense the court may, if the proceedings originated as a criminal proceeding in a court other than a juvenile court, enter an order transferring the case back to the court of origin, or to any court in the county having criminal jurisdiction; or if the case originated on petition in juvenile court, the court may enter an order showing its refusal to take jurisdiction and permit the child to be proceeded against in accordance with the laws of the State governing the commission of crimes or violation of municipal ordinances;

Thus, it is apparent that the Tucker County Juvenile Court's handling of Petitioner's case complied with West Virginia law and Petitioner's conviction must be upheld if federal constitutional guidelines were not violated.

The recent expansion of due process guarantees in juvenile proceedings began with the decision of Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), in which the United States Supreme Court held that a waiver of juvenile jurisdiction is a "critically important" proceeding which determines vitally important statutory rights of the juvenile. Kent v. United States, 383 U.S. at 560, 86 S.Ct. 1045. One year later, in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), it was decided "that various of the federal constitutional guarantees accompanying ordinary criminal proceedings were applicable to state juvenile court proceedings where possible commitment to a state institution was involved." See In re Whit-

tington, 391 U.S. 341, 344, 88 S.Ct. 1507, 1508, 20 L.Ed.2d 625 (1968). More specifically, Gault required that an alleged delinquent be afforded the right to counsel, that there be timely notice of any delinquency charges and that the rights of cross-examination and of cautioning against self-incrimination be extended to the juvenile.

Following these decisions, however, some conflict existed as to whether or not Kent and Gault were directly applicable to juvenile waiver proceedings, and if so, whether or not they were to be applied retroactively. Language in Kent has given rise to the restricted view that the decision applies only to an interpretation of the Juvenile Court Act of the District of Columbia. Likewise, Gault has been strictly construed by some courts to apply only to delinquency proceedings. See cases cited in Kemplen v. Maryland, 295 F.Supp. 8, 9–10 (D.Md.1969). Since Kent was decided on March 21, 1966, and Petitioner's waiver occurred on July 23, 1966, there is no question as to the application of that decision to Petitioner. With regard to the retroactivity of the Gault decision, the Fourth Circuit Court of Appeals recently has held that Gault will be given retrospective application. Kemplen v. Maryland, 428 F.2d 169, 173 (4th Cir. 1970). This decision also clarified any misunderstanding of the Kent and Gault decisions when the Court held that a juvenile was entitled to legal representation, either privately employed or court appointed, at juvenile waiver hearings, and in order to complement and support this right to counsel, that the child, his parents and counsel "be given adequate notice of the nature of the proceeding, its date, and the charges to be considered." Kemplen v. Maryland, 428 F.2d at 175. It is against these constitutional yardsticks that Petitioner's proceedings must be measured.

The order entered by the Juvenile Court of Tucker County on July 23, 1966, by which counsel was appointed and jurisdiction over Petitioner waived, would indicate that the newly appointed attorney could not have had sufficient time

to prepare for the juvenile court proceedings where jurisdiction was refused. Despite the recitation in the order that counsel had conferred with his client prior to the proceedings, such short notice ordinarily would be inadequate under the teaching of *Kemplen*. It should be noted, however, that counsel had a second occasion to present evidence in opposition to the juvenile court's waiver of jurisdiction. On October 5, 1966, the day after the return of an indictment by the grand jury, the circuit court returned the case to the juvenile court. The fact that counsel had discussed the case with his client during the interval from July 23, 1966, to October 5, 1966, and was familiar with the case, convinces this Court that Petitioner's attorney had ample opportunity to present any evidence in opposition to the juvenile court's second refusal to accept jurisdiction. State habeas transcript at p. 26.

From the evidence it appears that Petitioner's mother was not notified of her son's difficulties, and it is urged that this lack of notice is fatally defective. A case summary prepared by the Marshall County Department of Welfare for use by its Tucker County counterpart, and introduced into evidence as Petitioner's exhibit number three, reveals that the State of West Virginia had custody of Petitioner and that all previous juvenile rehabilitative measures had failed.[1] Under the circumstances, therefore, this Court feels that notice to Petitioner's mother was unnecessary.

Next, Petitioner claims officials in Louisiana did not inform him of his right to remain silent. With the exception of Petitioner's own testimony, this assertion is unsupported by any evidence. Petitioner has not alleged, nor does the evidence indicate, that a statement or statements were made by Petitioner at the time of his arrest. Likewise, there is no showing that any statements that might have been made by Petitioner were actually used against him in later proceedings. In the absence of a showing of prejudice, this Court must conclude that this claim is devoid of merit.

Petitioner's fourth contention, that he was not afforded counsel at his preliminary hearing, is untenable. In fact, Petitioner contradicts this claim by indicating on this Court's habeas corpus petition that a preliminary hearing was not held. Even if a preliminary hearing had beeen conducted, the absence of an attorney then would not be a ground for Petitioner's relief. Although the United States Supreme Court recently held that a preliminary hearing is a critical stage and that an accused has the right to legal representation, Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), this decision will not be applied retroactively. Phillips v. North Carolina, 433 F.2d 659 (4th Cir. 1970).

Petitioner's fifth contention is that his indictment was invalid in that he should have been charged with the lesser offense of "joyriding" under W.Va.Code ch. 17A, art. 8, § 4 (Michie 1966),[2] and

---

1. The Petitioner had appeared in juvenile courts on at least three different occasions before being placed in a foster home. This placement was made by the Marshall County Department of Welfare with the permission of Petitioner's mother. Petitioner remained in the foster home approximately one month before disappearing. After being located he was given permission to remain on probation while attending Seamanship School. His truancy from this school and subsequent apprehension in Arizona led to the revocation of his probation and to his confinement at the forestry camp.

2. The Code provides:

Any person who drives a vehicle, not his own, without consent of the owner thereof, and with intent temporarily to deprive said owner of his possession of such vehicle, without intent to steal the same, is guilty of a misdemeanor. The consent of the owner of a vehicle to its taking or driving shall not in any case be presumed or implied because of such owner's consent on a previous occasion to the taking or driving of such vehicle by the same or a different person. Any person who assists in, or is a party or accessory to or

not grand larceny as set out in W.Va. Code ch. 61, art. 3, § 13 (Michie 1966).[3]

Larceny has been defined in West Virginia as "the unlawful and felonious stealing, taking and the carrying away of the personalty of another of some value with felonious intent on the part of the taker to deprive the owner of his property permanently." State v. Pietranton, 137 W.Va. 477, 482–483, 72 S.E.2d 617, 620 (1952) quoting from Trevathan v. Mutual Life Ins. Co. of New York, 166 Or. 515, 113 P.2d 621. The apparent distinction between a larceny offense and the offense of unlawful taking of a vehicle is that the former requires an intent to permanently deprive the owner of his vehicle while the intent involved in the latter is a temporary one. Robinson v. Commonwealth, 190 Va. 134, 56 S.E.2d 367, 372 (1949); Slater v. Commonwealth, 179 Va. 264, 18 S.E.2d 909, 910 (1942); Annot., 9 A.L.R.3d 633, 634 (1966).

The only evidence bearing on this issue was the testimony offered by Petitioner and his co-defendant. Both stated at the plenary hearing that they did not intend to permanently deprive the owner of his truck. Thus, the obvious conclusion follows that they could not be guilty of grand larceny. In the *Robinson* and *Slater* cases cited above, the defendants, like Petitioner here, had abandoned stolen vehicles. Each defendant was unsuccessful in his attempt to disprove the required intent of permanent deprivation. In *Robinson* the court stated:

> In the case at bar the conduct of the defendant negatives any idea that he intended to deprive the owner of the car temporarily. He did no act prior to his arrest to indicate that he intended to return the car to the owner. On the other hand, his conduct and testimony disclose that he intended to deprive the owner of the car permanently. This is the only conclusion that can be reached from the evidence. The circumstances under which the car was taken, and his actions regarding it afterwards, *including his abandoning it in a public highway*, show clearly that he was guilty of the offense of larceny and not of unauthorized use.

Robinson v. Commonwealth, 190 Va. 134, 56 S.E.2d 367, 372 (1949) (Emphasis added).

■ After considering the evidence presented at the hearing and applicable case law, this Court concludes that there was sufficient evidence on which to sustain Petitioner's grand larceny conviction. Consequently, the failure of the Tucker County Grand Jury to indict Petitioner on a lesser charge cannot be elevated to a constitutional deprivation.

The facts alleged by Petitioner in support of his sixth ground attack the voluntariness of his plea. Petitioner claims that his guilty plea was influenced by the assurances of his attorney that Petitioner either would be returned to the forestry camp or placed on probation if a guilty plea were entered. It is also Petitioner's contention that he was persuaded to plead guilty by his attorney's statement that a not guilty plea would result in a confession by the co-defendant being used against Petitioner.

■ Although guilty pleas induced by promises or threats are involuntary and therefore void, Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), the burden of proving involuntariness is upon the Petitioner. Vanater v. Boles, 377 F.2d 898 (4th Cir. 1967). Again, however, there

---

an accomplice in any such unauthorized taking or driving, is guilty of a misdemeanor.

3. The penalty for grand larceny is:
 If any person commit simple larceny of goods or chattels, he shall, if they be of the value of fifty dollars or more, be deemed guilty of grand larceny, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than ten years; and if they be of less value, he shall be deemed guilty of petit larceny, and, upon conviction thereof, be confined in jail not exceeding one year.

is no evidence, other than the testimony of Petitioner and his co-defendant, to support the claim that the guilty plea had been induced. Petitioner further testified that he had no assurances from anyone other than his attorney and that he was advised of his right to a jury trial and of a possible penitentiary sentence.

At the state habeas hearing and at this Court's plenary hearing, Petitioner's attorney testified that no such promise had been made and that Petitioner was aware of his rights.[4] The threatened use of the co-defendant's confession is unsubstantiated by the evidence.

The attorney's testimony and the state court records also reveal that a continuance was granted on October 5, 1966, to allow Petitioner additional time in which to consider his plea. While the state record, supported by this evidence, shows that Petitioner was actually aware of the possible alternatives open to him and, likewise, the possible consequences of each alternative, the state record is silent on the voluntariness of the guilty plea.[5] It should be noted, however, that Petitioner's testimony and the testimony of his attorney at the plenary hearing clearly establishes that the state trial judge inquired into the voluntariness of the guilty plea.

Thus, in view of all the records and evidence regarding this claim this Court determines that Petitioner's plea was not influenced by threats or unfulfillable promises and, therefore, was entered knowingly and voluntarily.

Petitioner contends that his one to ten year sentence for grand larceny constituted cruel and unusual punishment. The penalty for a grand larceny conviction in West Virginia is an indeterminate sentence of not less than one year nor more than ten years, as stated in W.Va.Code ch. 61, art. 3, § 13 (Michie 1966).

In resisting his sentence Petitioner neither attacks the validity of the statute under which he was convicted nor alleges that his penalty exceeded that provided for by the statute.[6] Rather, Petitioner stresses the fact that he was only sixteen when sentenced. However, as stated above, a juvenile over sixteen years of age may be prosecuted "in accordance with the laws of the State governing the commission of crimes * * *." W.Va.Code ch. 49, art. 5, § 14 (Michie 1966).

Since Petitioner's conviction and sentence are permitted by West Virginia law and do not violate any federally protected right, Petitioner's contention must fail.

Petitioner's last allegation, denial of effective assistance of counsel, is cumulative in that it embraces and summarizes certain grounds earlier considered. Additional matters to be considered, however, are Petitioner's claims that his attorney's failure to contest alleged procedural errors constituted ineffective assistance of counsel; and that counsel, who represented both defendants, labored under a conflict of interest.

The failure of an accused to get the "best deal" (as suggested by Petitioner's claim that he should have been convicted for "joyriding" instead of grand larceny) is not evidence of ineffective assistance of counsel. Gibson v.

---

4. Prior to Petitioner's arraignment his attorney learned from discussions with the Superintendent of the State Forestry Camp for Boys that Petitioner would not be returned to the camp. This information was relayed to Petitioner before he entered his plea.

5. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), holds that the voluntariness of a guilty plea cannot be presumed from a silent record. However, since Petitioner's plea was entered on October 11, 1966, *Boykin* will not be applicable. Hawkins v. Coiner, No. 14,234 (4th Cir. Apr. 14, 1970).

6. It is well settled that a sentence within a valid statute cannot amount to cruel and unusual punishment; if a statute provides for such punishment, only the statute can be attacked. United States v. Dawson, 400 F.2d 194, 200 (2d Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969); Annot., 33 A.L.R.3d 335, 359 (1970).

Boles, 288 F.Supp. 472, 476 (N.D.W.Va. 1968). Instead, Petitioner must show that he was not represented by his attorney, that the attorney was unfamiliar with the facts of the case or the applicable law, or that his attorney lacked sufficient time to prepare for the case. See Gibson v. Boles, *supra* at 477 and cases cited therein. These shortcomings must result in representation that "shocks the conscience * * * and [produces] * * a mockery of justice." Knowles v. Gladden, 378 F.2d 761, 767 (9th Cir. 1967). The burden of proof is on the Petitioner to show by the preponderance of credible evidence that his representation was indeed shocking to the conscience. Raleigh v. Coiner, 302 F.Supp. 1151, 1161 (N.D.W.Va.1969). Petitioner here has failed to meet that burden.

 While one attorney should not represent two or more co-defendants if there is a conflict of interest among the co-defendants, it does not follow that joint representation automatically results in prejudice to one or more clients. Morgan v. United States, 396 F.2d 110 (2d Cir. 1968). Petitioner maintains that two acts by his co-defendant, a subsequent offense and the confession to the original offense, created a conflict of interest. With the exception of Petitioner's "guilt by association" argument, there is no other evidence to support the allegation that counsel did not represent both clients effectively. The trial judge, being aware of possible conflicts, was careful to remind counsel to inform the court if an actual conflict arose. No reported conflict appears in the record. Since the co-defendant's second offense did not involve Petitioner and was separate and apart from the grand larceny charge, no prejudice to Petitioner could have resulted. Similarly, the confession, although allegedly describing Petitioner's involvement in the theft of the truck, was not made by Petitioner and could not violate his constitutional rights if used in any subsequent trial.

It appears that the conflict of interest involved in this case, if any existed at all, was so negligible that it could not have, as a practical matter, altered the final result. Accordingly, after applying the facts presented to the standards involved, this Court finds that Petitioner was represented by competent counsel.

For the reasons above stated, it is adjudged and ordered that Petitioner's claims for federal habeas corpus relief be, and the same are hereby denied, and the petition herein is dismissed and retired from the docket of this Court.

If Petitioner should desire to appeal the decision of this Court, written notice of appeal must be received by the Clerk of this Court within 30 days from the date of entry of this order, pursuant to Rule 4 of the Rules of Appellate Procedure. The notice of appeal should also include a request for a certificate of probable cause which is required for an appeal by 28 U.S.C.A. § 2253. These papers should be submitted in duplicate.