**William James MILLER, Petitioner,**

v.

**Donald L. QUATSOE, Warden, Wisconsin State Reformatory, Respondent.**

**Civ. A. No. 70–C–203.**

United States District Court, E. D. Wisconsin.

Oct. 19, 1971.

---

Alan Marcuvitz and Peter J. Salza, Milwaukee, Wis., for petitioner.

E. Michael McCann, Dist. Atty., by Michael Ash, Asst. Dist. Atty., Milwaukee, Wis., and Robert W. Warren, Atty. Gen., by William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

This is an application for writ of habeas corpus pursuant to Title 28 U.S.C. § 2254. Petitioner is presently incarcerated in the Wisconsin State Reformatory, having been convicted of armed robbery (Wis.Stats. § 943.32) and sentenced to an indeterminate term of not more than twelve years in the Wisconsin state prisons. Petitioner took no appeal from his conviction for armed robbery but sought a writ of habeas corpus in the Wisconsin Supreme Court on the grounds that Wisconsin unlawfully acquired jurisdiction over him and that the juvenile waiver hearing in which the juvenile court waived jurisdiction over him was defective. The Wisconsin Supreme Court, after an evidentiary hearing, denied *per curiam* the application for a writ (Unpublished Opinion Miller v. Quatsoe, Case No. 70–81 (1970)). Petitioner, for the reasons presented to the Wisconsin Supreme Court, now seeks a writ of habeas corpus from this court. The parties have submitted briefs and orally argued the matter before me. For the reasons set out below, I grant petitioner's application but stay it pending action by the State of Wisconsin.

On April 16, 1968, knowing that Mr. Miller, the petitioner (then age 17—born September 10, 1950), was in Indiana, the Children's Court of Milwaukee County, Wisconsin, issued a request for the return of petitioner from Indiana to Wisconsin to face allegations of delinquency. On April 18, 1968, detectives from the Wauwatosa, Wisconsin, Police Department took custody of petitioner and returned him to the detention facility at the Children's Court Center in Wisconsin. Mr. Miller was held without a hearing until April 20, 1968, a Saturday.

While in custody at the detention facilities, Mr. Miller was apparently involved in some disturbance, and the detention facility personnel wished to remove him. In any event, in the early morning of Saturday, April 20, an assistant district attorney phoned the county judge, and the judge agreed to hold a juvenile waiver hearing for Mr. Miller and two other juveniles. No petition for a waiver hearing was ever served on Mr. Miller, nor were his parents contacted. Pursuant to the judge's request, an attorney was contacted about 8:00 A.M., and he agreed to act as guardian ad litem for petitioner and the two other juveniles (apparently all three were involved in the same incident). The attorney arrived at the Children's Court Center at about 8:30 A.M., reviewed the records furnished by the district attorney's office and Children's Court Center, and conferred (for the first time) with Mr. Miller and the two other juveniles. On the record before me, all that is known about the files which were reviewed by the appointed attorney is that they were the files of the district attorney and the Children's Court. What background information they contained about petitioner, a resident of Minnesota who prior to escape was incarcerated in Minnesota's Circle Pine Boys' Home, is unknown.

The waiver hearing was commenced at about 9:30 A.M. with neither a clerk nor a court reporter present. An attempt was made to call a court reporter but none was available and the guardian ad litem stipulated that a dictation machine could be used to record the proceedings. The guardian ad litem also informed the court that he was prepared for a hearing. At the hearing, which lasted about an hour and a half, testimony was taken. At the end of the hearing, the judge waived juvenile court jurisdiction over the petitioner after making specific findings to explain his decision to waive. Subsequently Mr. Miller was tried as an adult and convicted of armed robbery. Sometime during the week following April 20, it was discovered that because of either a malfunction or erasure, the tape recording of the waiver hearing could not be transcribed. As a result, the only records of the waiver hearing are the judge's personal notes taken at the hearing (which are not before me) and the formal order waiving Children's Court jurisdiction. Neither petitioner nor his guardian ad litem was notified of this discrepancy. At the evidentiary hearing ordered by the Wisconsin Supreme Court pursuant to petitioner's application for state habeas relief, none of the participants at the waiver hearing had more than a dim recollection of that event.

Petitioner advances four grounds for issuance of a writ: (1) The State of Wisconsin improperly brought petitioner back from Indiana; (2) petitioner was not afforded effective counsel at the waiver hearing; (3) inadequate notice was given petitioner of the waiver hearing; and (4) no reviewable record of the waiver decision was made.

█ Petitioner's first ground that Wisconsin improperly brought Mr. Miller back from Indiana is without merit. Even assuming that Mr. Miller's return to Wisconsin was improper under state or federal law, such impropriety does not impair the power of a court to try a person for a crime. Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952); United States v. Ruffin, 389 F.2d 76, 77 (7th Cir. 1968); United States v. Hoffman, 385 F.2d 501, 503–504 (7th Cir. 1967); O'Shea v. United States, 395 F.2d 754 (1st Cir. 1968); LaFranca v. Immigration and Naturalization Service, 413 F.2d 686, 689 (2d Cir. 1969); Government of Virgin Islands v. Ortiz, 427 F.2d 1043, 1044 (3rd Cir. 1970); McCord v. Henderson, 384 F.2d 135, 136 (6th Cir. 1967); Sewell v. United States, 406 F.2d 1289, 1292 (8th Cir. 1969); Charron v. United States, 412 F.2d 657, 659 (9th Cir. 1969); Hobson v. Crouse, 332 F.2d 561 (10th Cir. 1964).

1272

Petitioner's remaining grounds for issuance of a writ are founded on the supposition that constitutional guarantees of Fourteenth Amendment due process are applicable to juvenile waiver proceedings held pursuant to Chapter 48 of the Wisconsin Statutes. Chapter 48 as it is pertinent to this case is described in Gibson v. State, 47 Wis.2d 810, 815 177 N.W.2d 912, 914 (1970):

"The Children's Code (ch. 48, Stats.) provides that 'exclusive jurisdiction' is vested in the juvenile court over any child who is alleged to be delinquent because he has 'violated any state law' (sec. 48.12(1), Stats.). 'Child' is defined as a person under eighteen (sec. 48.02(3)). *Only if juvenile jurisdiction is waived as provided in sec. 48.18 can a child charged with a crime against the state be prosecuted in an adult criminal court.*" (Emphasis added.)

The United States Supreme Court in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), dealt with the juvenile waiver proceedings of the District of Columbia. It was held that waiver proceedings similar to the proceedings by which petitioner was waived were "critically important," *id.* at 556 and 560, 86 S.Ct. 1045, and that "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons." *Id.* at 554, 86 S.Ct. at 1053, quoted with approval in In re Gault, 387 U.S. 1, 30, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The court went on to state that while waiver proceedings could be of a more informal nature than "a criminal trial or even of the usual administrative hearing" it must "measure up to the essentials of due process and fair treatment." *Id.* at 562, quoted with approval in In re Gault, supra, at 30, 87 S.Ct. at 1057. In *Gault,* supra, it was held that a juvenile must be accorded full due process in a hearing where delinquency was determined.

Both *Kent* (waiver proceedings as required by federal statutory law) and *Gault* (delinquency determinations as governed by the Constitution) were respectively and expressly limited to the question before the court. *Kent,* supra, at 556, 86 S.Ct. 1045; *Gault,* supra, at 13, 87 S.Ct. 1428. However, the constitutional implications clearly present in the language of *Kent* were heightened in *Gault* when the Supreme Court in conclusion stated:

"As we said in Kent v. United States, 383 U.S. 541, 554 [86 S.Ct. 1045, 16 L.Ed.2d 84] (1966), with respect to waiver proceedings, 'there is no place in our system of law for reaching a result of such tremendous consequences without ceremony * * *.' We now hold that * * * [a delinquency hearing must be] in accordance with our law and constitutional requirements." 387 U.S. at 57, 87 S.Ct. at 1459; note also, supra, other portions of *Kent* cited in *Gault.*

In In re Whittington, 391 U.S. 341, 344, 88 S.Ct. 1507, 1508, 20 L.Ed.2d 625 (1968), the court in remanding the case to the state court in light of its decision in *Gault* specifically noted:

"* * * Upon such remand, the Ohio court may, of course, also consider the impact, if any, on the questions raised by petitioner of the intervening order of the Juvenile Court requiring him to face trial in the adult courts."

Since that time the weight of authority has been that "*Kent* prescribes constitutional duties." United States ex rel. Turner v. Rundle, 438 F.2d 839, 842 (3rd Cir. 1971), and the cases cited therein at 842 n. 11.

■ Respondent in his brief to this court appears to agree that *Kent* has constitutional application, and for the reasons stated by Judge Craven in Kemplen v. State of Maryland, 428 F.2d 169 (4th Cir. 1970), rehearing denied, rehearing en banc (6–1) denied, and by Judge Van Dusen in United States ex rel. Turner v. Rundle, supra, I agree

that at the very least (and without implying that more may not be required):

"* * * that the Sixth Amendment, as applied to the states by the Fourteenth Amendment, requires that an accused be allowed to retain counsel to represent and advise him at a hearing concerning the waiver of juvenile jurisdiction over the accused or, if the accused be indigent, that counsel be appointed to there represent and advise him.

"In order that child, parents, and counsel may have a reasonable opportunity to prepare the child's case as to waiver, due process demands that they be given adequate notice of the nature of the proceeding, its date, and the charges to be considered. * * *" *Kemplen*, supra, at 175.

Prior to the Supreme Court's ruling in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the circuit courts which had passed on the question were in disagreement as to whether late appointment of counsel in itself created a rebuttable presumption that the appointed counsel was constitutionally defective. The older rule was that the constitutional right to effective assistance of counsel was not violated by the late appointment of counsel unless the defendant could show that such late appointment operated to his prejudice. Callahan v. Russell, 423 F.2d 450 (6th Cir. 1970); Evans v. Beto, 415 F.2d 1129 (5th Cir. 1969); Cofield v. United States, 263 F.2d 686 (9th Cir. 1959), rev'd on other grounds 360 U.S. 472, 79 S.Ct. 1430, 3 L.Ed.2d 1531 (1969); United States v. Wight, 176 F.2d 376 (2d Cir. 1949); Thornburg v. United States, 164 F.2d 37 (10th Cir. 1947). The fourth and then the third circuits (and perhaps the first, see Megantz v. Ash, 412 F.2d 804 (1st Cir. 1969)), however, modified the doctrine to the effect that late appointments would be prima facie proof that counsel was inadequate, subject to the state's rebuttal that no prejudice had occurred.

In Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967), the fourth circuit held that when appointed counsel is required but the appointment is made only a short time before trial that " 'normally, *in the absence of clear proof that no prejudice resutled*, we should be obliged to treat the lawyer's representation as inadequate * * *.' " *Id.* at 627 (quoting and reaffirming Turner v. State of Maryland, 318 F.2d 852, 854 (4th Cir. 1963)), In explaining its position the court stated:

"Doubtless in the past there have been numerous instances of the designation of counsel on the day of the trial and even in the last hour before trial. The procedure, however, is no longer considered satisfactory for it invites lax performance of professional duty and endangers defendants' constitutional right to the effective assistance of counsel. * * * Courts are required to allow counsel sufficient time to inform themselves fully, to reflect maturely and to prepare thoroughly in the cases to which they are assigned, and courts can no longer tolerate perfunctory performance by appointed lawyers of the duty owed to indigent defendants." *Fields*, supra, at 628. See also Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967).

In United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3rd Cir. 1968), the third circuit followed the lead of the fourth and held that "the belated appointment of counsel is inherently prejudicial and makes out a prima facie case of denial of effective counsel, with the burden of proving absence of prejudice shifted to the prosecuting authorities." United States ex rel. Chambers v. Maroney, 408 F.2d 1186, 1189–90 (3rd Cir. 1969), (affirming Mathis). The third circuit in *Chambers* went on to hold that the state could prove lack of prejudice either on the record or through an evidentiary hearing. On the facts before the circuit court in *Chambers*, it was held that on the record there was affirmative proof that rebutted any pos-

sible prejudice and, accordingly, that there was no need to remand the case for an evidentiary hearing.

On appeal to the United States Supreme Court, that court affirmed the third circuit result but stated:

"\* \* \* In this posture of the case we are not inclined to disturb the judgment of ·the Court of Appeals as to what the state record shows with respect to the adequacy of counsel. Unquestionably, the courts should make every effort to effect early appointments of counsel in all cases. But we are not disposed to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel or to hold that, whenever a habeas corpus petition alleges a belated appointment, an evidentiary hearing must be held to determine whether the defendant has been denied his constitutional right to counsel. The Court of Appeals reached the right result in denying a hearing in this case." Chambers v. Maroney, 399 U.S. 42, 54, 90 S.Ct. 1975, 1982 (1970).

Subsequent to the Supreme Court's decision in *Chambers* the third circuit sitting en banc modified its holding in *Mathis*:

"\* \* \* A belated appointment of counsel would be strong evidence in a defendant's behalf, but a decision on the claim would still require an inquiry into the ability, experience and zeal with which counsel acted, both at the trial and in preparation, to determine whether the charge was made out.

"We therefore overrule *Mathis* to the extent it adopted the presumption doctrine. In doing so we do not intend to minimize the strong inference of prejudice from the failure to appoint counsel until the day of trial or very shortly prior thereto. Adequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom. The careful investigation of a case and the thoughtful analysis of the information it yields may disclose evidence of which even the defendant is unaware and may suggest issues and tactics at trial which would otherwise not emerge. \* \* \*" Moore v. United States, 432 F.2d 730, 735 (3rd Cir. 1970). Cited approvingly in Rastrom v. Robbins, 440 F.2d 1251 (1st Cir. 1971).

The eighth circuit, after quoting the Supreme Court's conclusion in *Chambers* held that:

"\* \* \* Implicit in this statement is the fact that prejudice must still be shown arising from the belated appointment of counsel and that such prejudice must either appear within the four corners of the state record or affirmatively appear by proof produced by the petitioner asserting it. \* \* \*" Konvalin v. Sigler, 431 F. 2d 1156, 1158 (8th Cir. 1970).

As I read the two *Chambers* decisions, it is not that completely clear as *Konvalin*, supra, would suggest that the Supreme Court meant to reject the criteria set out in the lower court's decision as opposed to simply leaving the question open. First, there is no express rejection, and second, the shift in burden of proof that *Mathis* and *Fields* held resulted in instances of belated appointments of counsel does not seem to be necessarily at odds with the language of the Supreme Court. Shifting the burden of proof does not automatically dictate the granting of a writ in every case of tardy appointment any more than the traditional burden of proof in habeas corpus cases dictates denial of a writ in every such case, nor does the *Mathis–Fields* rule require an evidentiary hearing every time late counsel is alleged. Indeed, that was the specific holding of the lower court in *Chambers*. In any case, I do not see where the rule in *Moore* will result in any less number of evidentiary hearings than the rule it modified. On the other

hand, the language of the Supreme Court certainly cannot be taken as an endorsement of the *Mathis–Fields* rule either.

The seventh circuit has never passed on the propriety or merits of the *Mathis–Fields* holding, and given the facts and the nature of the instant case, it is unnecessary for me to do so either. Whatever the consequences of *Chambers*, I believe that it leaves intact the holding of Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940), that the "Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment." "The right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is of the essence of justice." *Kent*, supra, at 561, 86 S.Ct. at 1057. While "the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial" (*Avery*, supra, at 446, 60 S.Ct. at 322), the requirement that counsel be appointed "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid." Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932); White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945).

Unlike a typical criminal action, a juvenile waiver proceeding vests the judge with a wide amount of discretion in making his determination. In his decision making, the juvenile judge does not simply deal with a specific factual incident in the accused's life as does a criminal court judge, but rather the juvenile judge must consider the juvenile's past, his future, his mind, and his acts and then balance these factors against the safety, needs, and demands of society. Further, besides judging the "whole man" as opposed to the act with wide as opposed to limited discretion, the juvenile judge may perform his task in a comparatively informal proceeding. *Kent*, supra, at 562, 86 S.Ct. 1045.

These dissimilarities accordingly create different demands on a lawyer's talent. Where a criminal trial requires an attorney if only because of its procedural complexity, the informality of a waiver hearing downgrades the need for this aspect of legal training. But where because a criminal trial telescopes on allegations of specified conduct the attorney's investigative role is likewise telescoped, in a waiver proceeding counsel's investigative role is broad based and "is of special importance * * * because he can provide the juvenile judge with information about the child's background and prior record which may be otherwise unavailable." *Kemplen*, supra, 428 F.2d at 174. Further, while in an adult criminal proceeding the defense attorney is called upon to utilize his analytical ability in deciphering the law to the utmost, the juvenile lawyer has a more "equitable" role. "The child's advocate should search for a plan, or perhaps a range of plans, which may persuade the court that the welfare of the child and the safety of the community can be served without waiver." Haziel v. United States, 404 F.2d 1275, 1279 (C.A.D. C.1968). Finally, unlike the criminal attorney, the juvenile lawyer, as the name suggests, is representing a child. He cannot, as the adult criminal lawyer perhaps can, rely on the immature judgment of his client.

These differences—the need to investigate an entire life, to devise a plan for a useful future, and the maturity of his client—emphasize lawyering qualities which require time to germinate in each case, rather than those qualities which come reflexively to the experienced attorney. In the instant case, for instance, petitioner was not a resident of the locality in which his waiver hearing was held. Thus, it is strongly suggested, given the overall haste demonstrated by the record, that it would have been impossible for even the most experienced attorney in an hour's time divided among three clients to have colated sufficient background information on petitioner so

as to adequately represent him. In Crow v. Coiner, 323 F.Supp. 555, 558–559 (N.D.W.Va.1971), the court suggested that in a somewhat similar, but less compelling, situation, shortness of time between appointment and hearing "would indicate that the newly appointed attorney could not have had sufficient time to prepare for the juvenile court proceedings where jurisdiction was refused." Cf. Rastrom v. Robbins, supra; Knight v. United States, 443 F.2d 174 (6th Cir. 1971).

■ The decision in this case, however, need not rest merely on the one hour's preparation time available to represent three nonresident juveniles in a waiver hearing, for even more basic deficiencies are evident. Neither petitioner, his parents, nor any guardian was notified that a hearing would take place, much less given a date and time. In essence neither petitioner nor his parents were allowed a true opportunity to either prepare a defense of their own, arrange for witnesses, or secure counsel of their own choosing. The state by foisting on petitioner counsel of its own choosing and at its own timing in effect dictated that petitioner's defense to juvenile waiver would be limited only to that information contained in the files of the district attorney and the juvenile court. This cannot be held to be in accordance with the precepts of Fourteenth Amendment due process. Powell v. Alabama, supra, at 52, 71, 53 S.Ct. 55; Chandler v. Fretag, 348 U.S. 3, 9–10, 75 S.Ct. 1, 99 L.Ed. 4 (1954); In re Gault, supra, at 30–31, 87 S.Ct. 1428; United States v. Johnston, 318 F.2d 288 (6th Cir. 1963). As Judge Craven put it, "Arrest on one day and [juvenile jurisdiction] waiver on the next * * * does not comport with this [due proc-

ess] requirement. Under such circumstances, justice can be unconstitutionally swift. If the right to counsel insured by our holding above is to be of value, adequate notice must likewise be guaranteed." Kemplen, supra, 428 F.2d at 175.

■ I hold then *that at the very least* in a juvenile waiver proceeding the constitution requires that the state must give adequate notice of the hearing to the juvenile or to his parent or his guardian. In the instant case, petitioner's parents were given no notice, and the notice given petitioner and his court-appointed guardian was inadequate. Given this holding, it is unnecessary to reach petitioner's fourth ground for issuance of a writ.*

The final question to be determined is the proper remedy. In *Kent*, supra, the Supreme Court remanded the case for a hearing de novo on the waiver to determine whether the waiver at the time it was issued was appropriate. It further ordered that "If that court finds that waiver was inappropriate, petitioner's conviction must be vacated." *Id*. 383 U.S. at 565, 86 S.Ct. at 1059. In United States ex rel. Turner v. Rundle, supra, at 844, the third circuit following *Kent* stated "that the writ shall issue unless a hearing de novo on the issue of certification be held." *Kemplen*, supra, at 178; Gibson v. State, supra, 47 Wis.2d at 817, 177 N.W.2d at 915.

■ Any new waiver hearing will have to comply with other constitutional requirements besides the right to counsel and notice, and appellate review by whatever means Wisconsin affords should be permitted. Furthermore, whatever court conducts a new inquiry on waiver is free to conclude that at the present time, almost three years after

---

* Since this opinion was drafted, the seventh circuit has decided the case of Smith v. Cady, (7th Cir., Oct. 5, 1971). In *Smith* the circuit court was presented with the question of whether there is a constitutional right to notice and an attorney in a juvenile waiver proceeding. That question, however, was left unanswered by the court in that it concluded that even if such a right existed, it was waived by Smith's voluntary plea of guilty in adult court. In the instant case Miller pleaded not guilty in adult court; accordingly, no waiver of rights issue is present.

the first waiver hearing, it is impossible to make a redetermination of the issue as of April 20, 1968, because the requisite facts cannot be found. In such a case the original waiver shall be deemed improvidently granted. James v. Cox, 323 F.Supp. 15 (E.D.Va.1971).

The foregoing opinion constitutes this court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

It is ordered that:

1. Petitioner's conviction of armed robbery in Branch 2 of the Circuit Court for Milwaukee County on December 17, 1968, be and it hereby is adjudged to be a nullity, and the respondent is directed to expunge it from the petitioner's records. Respondent shall release the petitioner from any further detention pursuant to his sentence in the above-mentioned matter.

2. This order is stayed for a period of thirty days, pending which the State of Wisconsin may (a) appeal this order to the Seventh Circuit, or (b) commence steps, if it deems it advisable, to render the conviction and the detention valid, which steps include the granting of leave to relitigate de novo the appropriateness of the Children's Court waiver of April 20, 1968, allowing petitioner to be tried as an adult and, if after such litigation it is determined that the waiver was appropriate, to reopen the judgments of conviction and sentence to present such new evidence as may be unearthed by reconsideration of the waiver which has a bearing as to guilt or sentence.

3. If the State of Wisconsin commences steps to relitigate the waiver of April 20, 1968, this order is stayed for an additional thirty days.

4. If the waiver of April 20, 1968, is found to have been inappropriate, or if it is found that at the present time it is impossible to determine whether or not such waiver was appropriate, this order shall no longer be stayed and will take effect immediately.