Gary A. GEBOY, Petitioner-Appellant,

v.

Robert L. GRAY, Warden, Wisconsin State Prison, Respondent-Appellee.

No. 72–1693.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1972.

Decided Jan. 5, 1973.

Gary A. Geboy, pro se.

Robert W. Warren, Atty. Gen., William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent-appellee.

Before KILEY, FAIRCHILD and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

Gary Geboy, then seventeen years of age, was arrested on December 9, 1967, and charged with injury by conduct regardless of life and indecent behavior with a child in violation of Wis.Stat. Ann. §§ 940.23 and 944.11(2). Six days later, on December 14, 1967, Judge John A. Decker, Circuit Judge sitting in the County Court, Children's Division, Milwaukee County, signed an order to show cause why Geboy should not be tried in criminal court rather than the children's division of Milwaukee County Court. Hearing was set for the next day, December 15, 1967, at 9:00 A. M.

Appearances at the hearing on the following day were entered by a probation officer, an assistant district attorney, a "voluntary defender," Geboy and his parents.[1] Mr. Coyne, the voluntary defender, had apparently never seen Geboy, his parents, or the defendant's record prior to this hearing.

Judge Decker began the proceedings by explaining to Geboy's parents that the reason for the proceeding, and the speed with which it was being held, was that the defendant had previously been determined to be mentally ill and placed in the Milwaukee County Hospital for Mental Diseases, but that he had been released from that institution within a very short time, "and this very serious offense has resulted." The judge explained that he had sought a written assurance from the Milwaukee County Hospital authorities that they would keep the defendant in their custody until he was given a hearing on the present charge, and that they had refused. Judge Decker continued as follows:

"I consider that such a refusal disregards the rights of Gary to be placed in an institution where he can get treatment, and where he can be protected against his own lack of control,

1. Geboy's parents, Mr. and Mrs. Anton Geboy, were late in arriving for the hearing, and apparently came only in response to a telephone call made to them at the time the hearing had been set to begin. The record does not disclose whether their late appearance was due to lack of adequate notice or was caused by some other reason.

self-discipline, and from his own aberrations. I consider that such conduct also on the part of the institution, refuses on its part to discharge its duties to society to protect society against Gary's lack of self-discipline, control, and aberrations.

"So we are faced here with a Hobson's choice of keeping him in the detention center which is little more than a prison when the boy needs mental treatment and we dare not send him to the mental institution for fear that they will not give him treatment and will inflict him on society. So, if the Court waives jurisdiction over him, he will be turned over to the criminal court where it is true, the jail facilities may be less pleasant than the detention facilities, here, but at the same time he will immediately have appointed for him a lawyer who I am sure will immediately request an inquiry into his mental illness, which is virtually res judicata, and I am sure what the answer will be. He can then be committed to an institution where his best interests will be served rather than the Milwaukee County Hospital for Mental Diseases."

At the conclusion of this statement, the voluntary defender responded, "right." A brief recess was then held so that Mr. Coyne, the defender, could read the police and other reports and talk to the boy's parents. Following the recess, Coyne explained to the court that he had told Mr. and Mrs. Geboy the procedure upon waiver of jurisdiction, the hospitalization procedures and the treatment petitioner would receive and concluded that the parents agreed with him that jurisdiction should be waived.

The proceedings continued with the judge asking Geboy whether he had had a chance to talk to the defender. Geboy's response was "a little." Judge Decker asked both the boy and his parents whether they understood that the purpose of the proceeding was to determine whether Geboy should be "handled" in the criminal court rather than children's court and that the goal was to see that Geboy got whatever medical attention he needed. All answered affirmatively.

The judge again stated his opinion that "the refusal of the hospital to maintain Gary in custody raises some question about his rights to number one to treatment," and that if Gary was not put in an institution there might ultimately come a time when he would be subjected to criminal penalties. He then asked the boy's father whether he fully understood the purpose of the proceeding. Mr. Geboy responded, "Yes, put him in a hospital, I assume." The judge stated that that was the hoped for result, that he could not guarantee the result, but that "the record here is virtually conclusive on the subject."

Certain formalities in the procedure were thereafter concluded and the defendant and his parents, through the defender, voluntarily waived jurisdiction of the children's court. Geboy was found to be mentally competent to stand trial in criminal court and was convicted on both counts. He received a ten year sentence for injury by conduct regardless of life and a consecutive eight year sentence for indecent behavior with a child. Geboy was committed to the Wisconsin State Prison at Waupun. Following the denial of a petition for habeas corpus by the Wisconsin Supreme Court, petitioner sought habeas corpus relief in the United States District Court for the Eastern District of Wisconsin. Judge Tehan denied petitioner relief on June 13, 1972.[2] This appeal followed.

Petitioner's brief on appeal, prepared by Geboy acting pro se with the assistance of a law student and submitted to

---

2. Although the district court denied relief on the ground that petitioner had failed to exhaust his state court remedies, it is clear that this ruling was incorrect, and indeed, the state does not contest this issue on appeal. The issues raised here were raised in the state court proceeding and decided adversely to the petitioner.

the court without oral argument, frames the issue to be considered by us as one of inadequate notice of the waiver hearing.[3] Notice to the petitioner and his parents was given only 19½ hours before the hearing was to take place. In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the Supreme Court held that the waiver of juvenile court jurisdiction is a " 'critically important' action determining vitally important statutory rights of the juvenile," id. at 556, 86 S.Ct. at 1055, and that such waiver proceedings "must measure up to the essentials of due process and fair treatment." Id. at 562, 86 S.Ct. at 1057. Kent was followed by In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), in which the Court made clear that adequate notice of certain juvenile proceedings was of constitutional dimension. In holding that notice to parents of a hearing on juvenile delinquency given the night before an afternoon hearing was inadequate, the Court stated:

> "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must 'set forth the alleged misconduct with particularity'." Id. at 33, 87 S.Ct. at 1446.

Subsequent to the Gault decision, numerous courts have held that the requirement of reasonable notice applies to juvenile court waiver hearings. Powell v. Hocker, 453 F.2d 652, 654 (9th Cir. 1971); United States ex rel. Turner v. Rundle, 438 F.2d 839, 842–843 (3d Cir. 1971); Kemplen v. Maryland, 428 F.2d 169, 172–175 (4th Cir. 1970); Miller v. Quatsoe, 332 F.Supp. 1269, 1272–1273 (E.D.Wis.1971); Crow v. Coiner, 323 F.Supp. 555, 558 (N.D.W.Va.1971). In Kemplen, supra, the court noted the critical importance of the waiver proceeding, stating:

> "[N]othing can be more critical to the accused than determining whether there will be a guilt determining process in an adult-type criminal trial. The waiver proceeding can result in dire consequences indeed for the guilty accused. If the juvenile court decides to keep jurisdiction, he can be detained only until he reaches majority. . . . But, if jurisdiction is waived to the adult court, the accused may be incarcerated for much longer, depending upon the gravity of the offense, and, if the offense be a felony, lose certain of his rights of citizenship." 428 F.2d at 174. (Emphasis in original.)

In this case waiver proved to be very costly to the accused. Instead of a maximum period of detention of approximately four years, at which time petitioner would have reached the age of twenty-one, he was convicted of two felony charges and given an eighteen year sentence in the state penitentiary. Rather than the psychiatric help and counselling which were the hoped for result of the waiver proceedings, and which formed the basis for the voluntary waiver by petitioner and his parents, he has received only four days psychiatric hospitalization.

The state nevertheless argues that petitioner waived any defect in notice by failing to move for a continuance and insists that additional time for preparation was unnecessary because a voluntary defender was present at the hearing, had all of the diagnostic and other pertinent reports before him, and made an intelligent choice to chance the outcome of an incompetency hearing in the criminal court. We find several difficulties in accepting this argument, arising from the fact that counsel was not appointed prior to the time the hearing was to begin and the further fact that the record leaves us with grave doubts as to the adequacy with which the volun-

---

3. In his reply brief, in answer to the state's argument that petitioner waived any defects in notice through counsel, petioner asserts that failure to raise the issue of notice at the hearing was the result of "ignorance . . . [or] inadvertence of counsel." Reply Brief at 9, 10.

tary defender represented petitioner's interests.

■ We agree with other courts which have considered the question, that Kent v. United States, *supra*, and In re Gault, *supra*, when considered together, require that a juvenile be provided with counsel at the hearing on waiver of jurisdiction.[4] Powell v. Hocker, *supra*, 453 F.2d at 654; United States ex rel. Turner v. Rundle, *supra*, 438 F.2d at 842 (by implication); Kemplen v. Maryland, *supra*, 428 F.2d at 175; Miller v. Quatsoe, *supra*, 332 F.Supp. at 1272–1273; Crow v. Coiner, *supra*, 323 F.Supp. at 558.

In this case, counsel was present at the waiver hearing. However, since appointment was not made in advance, counsel had no time to either confer with petitioner or his parents, to explore possible alternatives to waiver which might prove more beneficial to petitioner, or to check the accuracy of the juvenile judge's reasons for desiring a waiver of jurisdiction. The Supreme Court has held that the duty to assign counsel "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932). That Court has also emphasized that the right to representation by counsel "is not a grudging gesture to a ritualistic re-

quirement." Kent v. United States, *supra*, 383 U.S. at 561, 86 S.Ct. at 1057. We are also instructed that not every tardy appointment of counsel requires reversal. Chambers v. Maroney, 399 U.S. 42, 54, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Each case must, therefore, be decided on its own facts, and the courts must determine whether prejudice to the defendant has resulted after an inquiry "into the ability, experience and zeal with which counsel acted, both at the trial and in preparation." Moore v. United States, 432 F.2d 730, 735 (3d Cir. 1970) (en banc).

Several courts have held that appointment of counsel on the day of the juvenile waiver hearing does not comport with the requirements of due process. Kemplen v. Maryland, *supra*, 428 F.2d at 175; Miller v. Quatsoe, *supra*, 332 F. Supp. at 1275; Crow v. Coiner, *supra*, 323 F.Supp. at 558–559. Judge Reynolds, in the *Miller* case, *supra*, noted many of the considerations which indicate that added time for preparation may be even more essential in a case involving a juvenile than in the case of the average adult offender, including "the need to investigate an entire life, to devise a plan for a useful future," and the inability to rely on the immature judgment of the juvenile client. 332 F. Supp. at 1275.

In this case, the problems inherent in belated appointments of counsel may

---

4. In Kent v. United States, *supra*, 383 U.S. at 558–562, 86 S.Ct. at 1056, the Supreme Court discussed decisions of the United States Court of Appeals for the District of Columbia Circuit requiring the assistance of counsel "in the 'critically important' determination of waiver," and, although not stating whether due process absolutely required the appointment of counsel, concluded:

> "The right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is of the essence of justice. Appointment of counsel without affording an opportunity for hearing in a 'critically important' decision is tantamount to denial of counsel." *Id.* at 561, 86 S.Ct. at 1057.

The Court in In re Gault, *supra*, 387 U.S. at 34–42, 87 S.Ct. at 1428, specifically held that a juvenile had a right to counsel in a hearing on delinquency, and indicated that its holding in *Kent* was of constitutional importance, stating:

> "The child 'requires the guiding hand of counsel at every step in the proceedings against him'. Just as in Kent v. United States, *supra*, at 383 U.S. 561–562, 86 S.Ct. 1057–1058, we indicated our agreement with the United States Court of Appeals for the District of Columbia Circuit that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, . . . ." *Id.* at 36, 87 S.Ct. at 1448.

well have been compounded by the representation given by the voluntary counsel at the waiver hearing. The state's argument that petitioner waived any defect in notice is predicated on the assumption that petitioner and his parents, through counsel, failed to ask for a continuance in the case in order to explore alternatives,[5] and that they understandingly made a decision which could have the result which in fact occurred. Nowhere in the record is there any indication, other than the juvenile judge's indirect statement that he could not guarantee the result, that the possible consequences of a waiver of juvenile jurisdiction were explained to petitioner and his parents. The scanty evidence in the record before us, however, indicates that very possibly petitioner and his parents may have been totally misled.

When asked if he understood the purpose of the waiver hearing, petitioner's father responded with the statement that he thought the purpose was to put his son in a hospital. This statement was made after the recess, which is the only time voluntary counsel spoke with petitioner and his parents, and which is the only time the possible consequences of a waiver of jurisdiction could have been explained to them. While it is conceivable, and in most cases would simply be presumed, that petitioner's counsel did give Geboy and his parents a full explanation during this period, counsel's obvious predisposition to agree to a voluntary waiver, shown in his spontaneous affirmative response to the juvenile judge's initial statement of his anticipated action in the case, given before he had ever talked to either petitioner or his parents and before he had examined

any of the records, makes us doubt whether counsel did in fact consider and explain all the possible consequences. Counsel's own statement of what he told the Geboys during the recess is ambiguous. Upon resumption of the hearing, the defender stated that he had explained to petitioner's parents the procedure upon waiver of jurisdiction, "what the hospitalization procedures would be and the treatment Gary would be given, and they agreed with me that I feel that jurisdiction should be waived."

A case somewhat similar to this was presented to the District of Columbia Court of Appeals in Haziel v. United States, 131 U.S.App.D.C. 298, 404 F.2d 1275 (1968). In that case, the petitioner's court-appointed attorney, apparently without consultation with the defendant or his parents, sent a letter to the juvenile court stating that he had no objection to a waiver of juvenile jurisdiction. The Court of Appeals held that the juvenile could not be bound by his counsel's statement unless it were found that the juvenile and his mother participated fully and intelligently in the decision not to demand a waiver hearing. The court compared the situation of the critically important waiver hearing to that of a defendant who states his desire to plead guilty to an offense. In such a case, Rule 11 of the Rules of Criminal Procedure requires that the court address the defendant personally and determine "that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."

The Haziel court also emphasized the proper role of counsel in a waiver hearing, noting that "[t]he child's advocate

5. Counsel's failure to ask for a continuance does not bar federal habeas corpus relief. Waiver of a constitutional right is an "intentional relinquishment or abandonment of a known right or privilege." Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The courts "indulge every reasonable presumption against waiver of fundamental constitutional rights," Emspak v. United States, 349 U.S. 190, 198, 75 S.Ct. 687, 99 L.Ed. 997 (1955), and "the standard here put forth depends on the considered choice of the petitioner. . . . A choice made by counsel not participated in by the petitioner does not automatically bar relief." Fay v. Noia, supra, 372 U.S. at 439, 83 S.Ct. at 849. See also Townsend v. Bomar, 351 F.2d 499 (6th Cir. 1965).

should search for a plan, or perhaps a range of plans, which may persuade the court that the welfare of the child and the safety of the community can be served without waiver." It appears almost certain that the court-appointed attorney in this case did not perceive his role in these terms. On the contrary, the record indicates that he devoted his entire efforts to obtaining the agreement of petitioner and his parents with the recommendation of the juvenile judge.

█ It is possible that after full investigation the voluntary defender, Geboy and his parents would all have decided that a waiver of jurisdiction was truly in the best interests of the juvenile. We think, however, that the combined effect of the late appointment of counsel and his notable lack of zeal in attempting to even consider other alternatives, particularly where the possible consequences of a waiver were so serious and where there is no reason to believe that psychiatric aid would not have been equally available in the juvenile system,[6] create a question of fact as to whether petitioner and his parents knowingly and intelligently waived the defect in notice of the juvenile hearing, and con-

sequently, the jurisdiction of the juvenile court.

█ The Supreme Court, in Kent v. United States, *supra*, held that the proper remedy in a case such as this, where the petitioner has passed the age of twenty-one, is to remand the case to the district court for a hearing *de novo* on waiver. At this hearing,[7] the testimony of petitioner, his parents and the voluntary defender will all be relevant on the issue of whether petitioner understandingly waived the defects in procedure and the jurisdiction of the juvenile court. If the court finds that a valid waiver did not take place, it will have to make its own determination on the question of whether, if the petitioner had not consented to a waiver of jurisdiction, and a contested waiver hearing comporting with due process requirements had taken place, a transfer to the adult courts would have been an appropriate disposition.[8] If it is found that the waiver of jurisdiction by the juvenile court was inappropriate, Geboy's conviction must be vacated and the information dismissed. *See* Kemplen v. Maryland, *supra*; Brown v. Cox, 467 F.2d 1255 (4th Cir. 1972).

Reversed and remanded.

---

6. The state does not appear to dispute the statement made in petitioner's brief that once adjudicated a delinquent, Geboy could have been committed to the custody of the Department of Health and Social Services under Wis.Stat.Ann. § 48.34(1)(d), (4), and sent to the Wisconsin State Home for Boys at Wales where he would have been tested to determine his psychiatric needs and given the treatment found to be required. The state does argue that this was not possible because the juvenile judge was of the opinion that the petitioner was not mentally competent to stand trial and thus could not be adjudicated a delinquent. The substance of this argument is that petitioner was mentally ill and therefore had to be waived to the adult criminal court system because the juvenile judge did not trust the Milwaukee County Mental Hospital au-

thorities to confine the petitioner. This is hardly a proper basis for turning the jurisdiction of a juvenile over to the adult criminal courts. The criminal courts are not the proper place for a child who needs institutional psychiatric care; conversely, if, as apparently found by both the institution which previously released petitioner and the trier of fact in the adult hearing on competency to stand trial, the petitioner was not mentally ill, no reason appears in the record why petitioner could not have been tried and adjudicated a delinquent in the juvenile court.

7. The district court should appoint an attorney to represent Geboy at the hearing.

8. *See* Wis.Stat.Ann. § 48.18.